In the Matter of Supplementary Proceedings: TRI-STATE INVESTORS CORPORATION, Respondent, v. FREDERICK McHENRY KITCHING and Another, Defendants, and ELIZABETH F. VILKOMERSON, Appellant.

In the Matter of Contempt Proceedings Instituted by TRI-STATE INVESTORS CORPORATION, Respondent, against FLORENCE MELLIN KITCHING, Defendant, and ELIZABETH F. VILKOMERSON, Appellant.*

First Department, December 5, 1930.

*Elizabeth F. Vilkomerson* [*C. Arthur Jensen* with her on the brief], appellant in person.

*Albert Adams* of counsel [*Samuel Meyers* with him on the brief; *Morris & Samuel Meyers*, attorneys], for the respondent.

MARTIN, J. The appellant herein, an attorney, represented a judgment debtor in supplementary proceedings. The respondent

---

* Motion to dismiss appeal denied, 256 N. Y. ——.

states that during the course of the proceeding the judgment debtor either failed or refused to appear and submit to examination. Because of such failure the court finally decided that both the judgment debtor and her attorney, the appellant herein, were guilty of contempt and committed the attorney to jail. The attorneys for the judgment creditor herein, who were seeking to commit the judgment debtor to jail, had acted as her attorneys in another proceeding, and eventually became judgment creditors by virtue of such relationship.

The appeal is from both the order adjudging appellant guilty of contempt and an order made by another justice refusing to vacate the order of commitment. In refusing to vacate the latter order the court said: " Upon the foregoing papers this motion is denied. I may say that I endeavored to refer the motion to the Justice who made the order in question, but he declined to accept the reference."

It does not appear why the justice who made the order committing the appellant to jail refused to hear the motion to vacate that order.

In a proper case, where the conduct of an attorney is such as to interfere with or impede the orderly procedure in supplementary proceedings, he may be committed to jail for contempt. Before such a commitment order is entered, however, it should not only be clearly shown that he has interfered with the orderly procedure in such a case, but the acts or conduct resulting in such interference must be set forth so that there may be a full opportunity for a review on the appeal from the order adjudging one guilty of contempt. (*Feinberg* v. *Kutcosky*, 147 App. Div. 393.)

The contempt proceeding appears to have been based almost entirely upon the affidavit of one Albert Adams, an attorney in the office of Morris & Samuel Meyers, attorneys for respondent. In his affidavit, after referring to a number of preliminary matters, he says: " We then returned to the Chambers of Mr. Justice McCook. Miss Vilkomerson and Mrs. Kitching refused to go in with me and remained near the elevator. Mr. Kover and I entered the Chambers. I explained to Mr. Justice McCook what had occurred. He sent his secretary out with me. At first we couldn't locate the two women. Finally, I discovered them hiding behind a wall. The secretary said to the women, ' Which is the attorney?' Miss Vilkomerson said ' I am.' The secretary then remarked ' Mr. Justice McCook orders that you submit your client to immediate examination. Otherwise you will be punished for contempt of court.'

" When they refused to comply with the directions of Mr.

Justice McCook *or of the secretary*, the secretary walked away in disgust, realizing that there was nothing further to accomplish with the ladies. * * *

" I say to this court that the conduct of Miss Vilkomerson and of Mrs. Kitching, the said judgment debtor, has been clearly contemptuous. They both willfully violated the express instructions of Mr. Justice McCook. They refused to listen to the Justice *or to his secretary or to me*. I think, without further protracting this affidavit, it is very apparent that the two women have been inspired with malicious, vindictive and revengeful motives and, in order to accomplish their ends, care nothing about orders of a Justice of the Supreme Court.

" They should be made to respect such orders."

The affiant then proceeded to state that the conduct of these parties impaired and prejudiced the rights of the judgment creditor and asked that they be punished for contempt of court. The order was thereafter granted, dated April 21, 1930, punishing both these women for contempt, which order nowhere recites the circumstances which resulted in the making of the order. (*Matter of Swenarton* v. *Shupe*, 40 Hun, 41.) It provides as follows: " Ordered that the said motion to punish the said Florence Mellin Kitching, one of the judgment debtors herein, and the said Elizabeth F. Vilkomerson, an attorney, be and the same hereby is in all respects granted, and it is

" Further Ordered and Adjudged that the said Florence Mellin Kitching, one of the judgment debtors herein, and the said Elizabeth F. Vilkomerson are both guilty of contempt of court and fined $100.00 each, and it is

" Further Ordered that the said Florence Mellin Kitching and the said Elizabeth F. Vilkomerson may purge themselves of their contempt of court and the fines will be remitted by the said Florence Mellin Kitching submitting herself to examination at Special Term, Part II, of this Court, at 10:00 A. M. on April 28, 1930, and it is

" Further Ordered that upon proof, by affidavit, of the failure of said judgment debtor, Florence Mellin Kitching to appear for and submit to examination, as heretofore directed, an order may be obtained, *ex parte*, committing both the said Florence Mellin Kitching and the said Elizabeth F. Vilkomerson as for a contempt of court."

In the meantime, a stay of the proceedings was obtained, which stay was granted in an order to show cause issued on the 2d day of May, 1930, by the Appellate Division, First Department.

On May ninth an order was entered in the Appellate Division vacating the stay. This order appeared in the New York Law Journal of May 10, 1930. On May twelfth, the appellant says, the judgment debtor served on the attorneys for the judgment creditor a notice of readiness to submit to examination. The attorneys for the judgment creditor deny that they received any such notice. However, there is in this record an affidavit of the party who says he served the notice, with a description of the office where the notice was served and a detailed statement of the conversation with Mr. Adams, when it is alleged he received the notice and his comment thereon. Mr. Adams thereafter applied for and obtained the order of commitment without informing the court that the judgment debtor had served a notice of her willingness to appear at any time, although no day had been set for the examination, the original date having passed while the stay was outstanding.

After the lawyer for the judgment debtor had been committed to jail, the justice who signed the order committing her was informed of the existence of such notice and immediately vacated the order of commitment and directed that she be released. There is no doubt that there has been conduct on the part of someone in this proceeding that deserves at least severe censure.

It is argued in the brief that the appellant was guilty of both criminal contempt and civil contempt. There are many important distinctions between a civil and a criminal contempt. (*King* v. *Barnes*, 113 N. Y. 476; *Boon* v. *McGucken*, 67 Hun, 251.) For which contempt the appellant was punished does not appear. If for criminal contempt the papers are wholly defective in failing to comply with the requirements of section 752 of the Judiciary Law, which provides: " Where a person is committed for contempt, as prescribed in section seven hundred and fifty-one, the particular circumstances of his offense must be set forth in the mandate of commitment."

In the case of *People ex rel. Barnes* v. *Court of Sessions* (147 N. Y. 290) the court said: " Our difficulty is with the formal mandate or judgment. As will be seen, it convicts the appellants of a criminal contempt and imposes punishment by fine and imprisonment. It does not specify the particular circumstances of the offense. In case of criminal contempt this is specifically required: ' When a person is committed for such a contempt the particular circumstances of his offense must be set forth in the mandate of commitment.' "

In the case of *People ex rel. Palmieri* v. *Marean* (86 App. Div. 278) the court held that a mandate of commitment for a criminal

contempt committed in the immediate view and presence of the court, which does not specify the particular circumstances of the offense, as required by section 11 of the Code of Civil Procedure, is defective, and such defect will be held fatal upon a review of the proceedings by certiorari, *although the papers before the reviewing tribunal clearly establish the sufficiency of the proof to sustain the conviction.*

It was first contended that the appellant was punished for a criminal contempt, and when it was pointed out that there were no facts set forth to warrant such punishment the respondent then contended that the appellant was punished for a civil contempt. Although the order recites that the appellant is guilty of contempt, it fails to show what the conduct was which resulted in the contempt. It was stated in the affidavit that the appellant disobeyed the order of the court, but it is not clear whether that contention rests upon the disobedience of a written order or an oral order given when the court directed the appellant to have the judgment debtor appear and be examined and when it was stated that if the judgment debtor did not appear for examination the lawyer would be held in contempt.

It nowhere appears that this appellant prevented her client from appearing and being examined. The argument of respondent finally narrows down to the fact that this appellant was committed for contempt, for using loud and boisterous language and for refusing to comply with the directions of the court, the secretary and the lawyer. The respondent's attorney says, " They refused to listen to the Justice, *or to his secretary or to me.*"

These generalities in the affidavits do not show a sufficient ground upon which to base a contempt, nor are they in such form as to show this court what particular conduct of the appellant was deemed contemptuous. There appears to have been a bitter quarrel between the attorneys which has apparently resulted in the contempt proceedings.

The papers do not show that appellant was guilty of a civil contempt. In the case of *Feinberg* v. *Kutcosky* (*supra*) the court said: " Orders in supplementary proceedings are judges' orders and not court orders (Code Civ. Proc. § 2434) and are proceedings of a civil character (Id. § 2433). Failure to originally appear for examination in pursuance of an order in supplementary proceedings, or upon an adjourned day, is a civil contempt and not a criminal one, and it is necessary that the order adjudging such contempt should recite that the court has found that the conduct of the party has been such as to defeat, impair, impede or prejudice the right or remedy of the other party to the proceeding. (Judiciary

Law [Consol. Laws, chap. 30; Laws of 1909, chap. 35], § 753; *Matter of Ryan*, 73 App. Div. 137; *Dailey* v. *Fenton*, 47 id. 418; *Sherwin* v. *People*, 100 N. Y. 351.) The order appealed from is fatally defective in this respect and must be reversed because of the failure to recite such finding."

It does not appear that the attorney did anything more than to appear for her client, nor does it appear that the client would have submitted to examination with or without the consent of the attorney. (*King* v. *Barnes, supra,* 481.) It nowhere appears that the lawyer advised or prevented her client from submitting to an examination. She had a right to appear and object to the proceeding upon the ground that the papers were defective and she was entitled to a hearing on that motion. The mere fact that a lawyer appears for a person who refuses to submit to an examination in supplementary proceedings does not warrant the court in sending the lawyer to jail because of the failure of the judgment debtor to be sworn and submit to the examination, unless it be shown that the lawyer was responsible for such conduct.

If the attorney suppressed the notice that had been served or, with knowledge thereof, went before a Supreme Court justice and obtained an order committing this appellant, that is a serious matter, especially in view of the fact that it is said the justice stated that if it had been called to his attention that the judgment debtor had consented to be examined in supplementary proceedings, he would probably not have issued the order of commitment.

The facts set forth in this record do not warrant the order of commitment. Both orders, therefore, should be reversed, with ten dollars costs and disbursements, and the motions to punish for contempt denied, with ten dollars costs, and the motion to vacate order of commitment granted, with ten dollars costs.

DOWLING, P. J., FINCH, MCAVOY and O'MALLEY, JJ., concur.

Order entered April 21, 1930, reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.

Order entered June 30, 1930, reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.