HOWARD S. TIERNEY, INC., et al., Appellants-Respondents, *v.* DARWIN R. JAMES, JR., Respondent-Appellant.

First Department, June 15, 1945.

*Brison Howie* of counsel (*Robert L. London* with him on the brief; *Howie & Robertson,* attorneys), for plaintiffs-appellants and respondents.

*Charles B. McGroddy, Jr.,* of counsel (*Rathbone, Perry, Kelley & Drye,* attorneys), for defendant-respondent and appellant.

MARTIN, P. J. The plaintiffs, Howard S. Tierney and Howard S. Tierney, Inc., moved for an order adjudging the defendant Darwin R. James, Jr., in contempt for failing to obey the terms of the interlocutory judgment entered in this action, dated November 22, 1937. The order appealed from adjudged the defendant in contempt on the application of the corporate plaintiff, fined him $250, "the plaintiff Howard S. Tierney, Inc. having failed to prove any damages in excess of that amount" and ordered the defendant to pay $500 for the fee

of that plaintiff's attorney and half of the cost of a reference. The motion of the individual plaintiff was denied.

We are now presented with cross appeals. The individual plaintiff contends that the court erred in finding: (1) that there was no basis for an award of substantial damage; (2) that the motion on behalf of the individual plaintiff was without merit; and (3) that the expenses of the reference should be divided equally between the plaintiffs and the defendant. The defendant argues that the interlocutory judgment and the proofs as to defendant's compliance therewith are insufficient to support any finding of contempt; that there was no proof that plaintiffs suffered any actual damage; and that the order is insufficient on its face.

This action was brought to obtain a judgment directing specific performance of an agreement dated September 19, 1932, between plaintiff, Howard S. Tierney, and defendant, Darwin R. James, Jr. Prior to the making of that agreement, Mr. Tierney and Mr. James were engaged in the insurance brokerage business. By the agreement the parties thereto contracted to carry on the insurance brokerage business through the plaintiff corporation. In addition, it provided that either party could retire from the business and sever his connection with the plaintiff corporation, and set forth the method by which the customers of the corporation should be allocated and the assets thereof divided. It provided for arbitration in the event that the parties were unable to agree on the matter of disposing of the assets.

In January, 1936, the defendant James served a notice of termination of his participation in the business, effective March 9, 1936. The parties were unable to agree on the allocation of customers. In accordance with the provisions of their contract each party selected an arbitrator and the two, so selected, nominated a third arbitrator. The arbitrators thereafter filed a unanimous report dividing the accounts between the individual plaintiff and the defendant. The award of the arbitrators was thereafter modified with respect to the records of certain customers and as so modified the award was confirmed. No appeal was taken, by either party, from the order confirming the award, as modified.

Pending the arbitration, the plaintiffs instituted this action against the defendant for specific performance of the contract between Mr. Tierney and Mr. James. After an order had been entered on the award of the arbitrators, the action was tried and an interlocutory judgment entered. That judgment was

unanimously affirmed by this court (254 App. Div. 863) and leave to appeal to the Court of Appeals was denied by the Appellate Division (255 App. Div. 759) and by the Court of Appeals (279 N. Y. 813).

The interlocutory judgment provided, among other things:

" 10. That the records of the business of the customers of the corporate plaintiff, Howard S. Tierney, Inc., which were, or had been such customers on or at any time prior to March 9, 1936, and at any time prior thereto or thereafter lost to the said corporation, except those specifically allocated by the award of the arbitrators as confirmed and modified by Judge ROSENMAN's order dated June 15th, 1937, to Howard S. Tierney and Darwin R. James, Jr., are the property of the corporate plaintiff and are not subject to the allocation or division between either the plaintiff, Howard S. Tierney, or the defendant Darwin R. James, Jr., and further that all other customers of Howard S. Tierney, Inc., as of March 9th, 1936, and not specifically allocated to the plaintiff, Howard S. Tierney, and the defendant, Darwin R. James, Jr., are and they hereby are adjudged to be the sole property of said corporate plaintiff, together with the records in connection with and appertaining thereto.

" 11. That the defendant, Darwin R. James, Jr., be, and he hereby is directed forthwith to return and deliver to the corporate plaintiff, Howard S. Tierney, Inc., all records in his possession or control at any time subsequent to March 9, 1936, pertaining to the business of any customers of Howard S. Tierney, Inc., and/or Howard S. Tierney, not specifically allocated to the said defendant, Darwin R. James, Jr., together also with any and all records pertaining to customers of the corporate plaintiff, Howard S. Tierney, Inc., and the business thereof which were, or had been such customers on, or at any time prior to March 9, 1936, and prior thereto or thereafter lost to said corporation.

" 12. That the defendant, Darwin R. James, Jr., be, and he hereby is perpetually enjoined and restrained both individually and as an officer, agent, servant, employee or associate, directly or indirectly of any person, firm or corporation from soliciting, accepting or receiving, either directly or indirectly, on behalf of himself, or any person, firm or corporation, the business of any customer of the plaintiffs, Howard S. Tierney and Howard S. Tierney, Inc., or either of them, which was not specifically allocated to him by the arbitrators, except on written consent of the plaintiff, Howard S. Tierney."

A motion by the plaintiffs to punish the defendant for contempt for violating the provisions of the interlocutory judgment was referred to a referee who, after having taken proof, reported that the motion to punish the defendant for contempt should be granted. The report contained the following:

"(a) Defendant violated the Interlocutory Judgment of this court, dated November 27th, 1937, in that he failed to return to the plaintiffs records and correspondence concerning the customers on the list hereto attached, none of which had been allocated to the defendant by the arbitrators, and which customers included those acquired by the plaintiff corporation after March 9th, 1936, the date when the defendant was no longer an officer, director or employee of said corporation.

"(b) That the defendant before returning some of the records and correspondence, pursuant to the order of this court, did, in violation of said Interlocutory Judgment, make or cause to be made, copies thereof, so that the value to the plaintiffs of the original records returned by the defendant was lost to the plaintiffs.

"(c) That the defendant, in violation of said Interlocutory Judgment, did solicit at least 54 of the customers listed on the schedule hereto attached."

The matter was re-referred to the referee as to damages only. Later a supplemental report of the referee recommended: "2. That the defendant should be fined the sum of $11,143.50, same to be awarded to the plaintiffs as damages," and "that the defendant should pay the costs and expenses of this reference, including counsel fees * * *."

On a motion to confirm the supplemental report of the referee, the court rendered an opinion stating that the said report did not set forth a sufficient basis for the damages. It further stated that the individual plaintiff was not damaged and that the corporate plaintiff was not damaged in a sum exceeding $250.

The interlocutory judgment disposes of the ownership of a great number of accounts. It does not list the names of customers. Defendant became associated with the firm of De Lanoy, Kipp & Swan after he retired from the corporate plaintiff. The records of 123 or 124 customers of that firm were subpoenaed and produced. Only two are named in the arbitrator's award as allocated to the individual plaintiff. One Mrs. Charles L. Lee or Mrs. Charles E. Lee may be eliminated as the name is not listed by the referee. The other, Royal Equities, is referred to in the report of the referee which states: "As to Royal

Equities, the evidence shows that they had been a customer of De Lanoy, Kipp & Swan long before the defendant's association with that firm * * *. I find that the defendant wrote no letters, retained no copies of records, sold no insurance, and made no solicitation of this account.''

Obviously, on this statement the defendant may not be charged with contempt with respect to the Royal Equities account.

In the supplemental report the referee states: '' It must be conceded that it would be most difficult to get such persons to testify why they did not continue their insurance with the corporate plaintiff. The defendant did produce one witness (John J. White) who testified that he did not take the insurance accounts controlled by him away from the corporate plaintiff because of anything the defendant did; on cross examination this witness stated that he had only given his business to the corporate plaintiff in an endeavor to retain the good will of the defendant's father, and when the defendant was no longer associated with the corporate plaintiff the reason motivating the witness (White) when he placed his accounts with the corporate plaintiff no longer existed and he therefore no longer left his business with them * * *.'' Notwithstanding this, the referee has listed four White items as violations of the interlocutory judgment.

Item No. 118, Linvale, Incorporated, is a corporation organized by defendant to take title to property and the policy included the interest of defendant and his wife. Nothing in the judgment may be read as requiring defendant to leave with plaintiffs insurance covering property in which he personally is interested.

Paragraph 12 of the interlocutory judgment enjoins defendant from soliciting or doing business with any customer of the individual or corporate plaintiff, or either of them, not specifically allocated to him by the arbitrators. Apart from the fact that no customer is named, the time status of a '' customer '' is not indicated in the interlocutory judgment. It is not certain whether it is intended to be applicable only to those who were customers of the plaintiffs on March 9, 1936 (the paragraph does not mention the date), or whether it is applicable to anyone who may have been and ceased to be a customer at some time prior thereto. The paragraph could be read as applicable to future customers. The importance of a definitive date is evident in the following quotation from the report of the referee:

'' The defendant contends that the properties involved in the accounts Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17,

18, 19, 20, 21, 22, 23, 24, 25, 28, 29, 30, 34, 35, 36, 37, 38, 39, 41, 42, 43, 48, 49, 53, 55, 56, 57, 58, 59, 79, 109, and 116, were properties owned on March 9th, 1936, by the East River Savings Bank or one of the other banks whose business was allocated to the defendant.

" As to these customers, the testimony and records themselves show that these properties were conveyed after March 9th, 1936, and I find that the new owners became the customers of the plaintiff corporation and as such new customers, are the property of the plaintiff corporation. The fact that the defendant was adjudged not to be an officer or director of the plaintiff corporation after March 9th, 1936, does not, in my opinion, bar the plaintiff corporation from accepting and claiming the new owners as its customers, acquired after March 9th, 1936. I find that these customers are in the same category as the 41 customers' accounts hereinabove referred to." (The 41 accounts were placed on the corporate plaintiff's books after March 9, 1936.)

The courts have held that " Unless a contempt proceeding is based upon an order which is clear and precise, no finding of contempt may be made." (*Matter of Mitchell* v. *Sperling,* 229 App. Div. 204.) The principle is well established. Various expressions thereof were set forth in *Porous Plaster Co.* v. *Seabury* (48 Hun 620, opinion reported in full 1 N. Y. S. 134). BRADY, J., writing for the General Term, said: " It seems to be well settled that, in order to punish for a violation of an injunction, the act complained of must be clearly embraced within the inhibited acts. *Bank* v. *Habel,* 58 How. Pr. 336. It has been said: ' As the defendant is bound to obey the process of the court at his peril, the language of the injunction should be so clear and explicit that an unlearned man can understand its meaning without the necessity of employing counsel to save him from subjecting himself to punishment for a breach of the injunction.' *Laurie* v. *Laurie,* 9 Paige, 235; *Sullivan* v. *Judah,* 4 Paige, 444. And, again, that, to sustain a proceeding for contempt, the order should be clear and explicit in its terms. *In re Cary,* 10 Fed. Rep. 625, 626. And also that a writ of injunction ought to be sufficiently explicit upon its face, by defining the property or matter enjoined, so that a party may be clearly advised of what he is not to do. *Moat* v. *Holbein,* 2 Edw. Ch. 188; *Clark* v. *Clark,* 25 Barb. 76. And, further, that if the order disobeyed be capable of a construction consistent with the innocence of the party of any intentional disrespect to the court, an attachment should not be granted. *Weeks* v. *Smith,* 3 Abb. Pr.

211. And, again: ' The injunction must clearly specify all the acts which the defendant is restrained from doing; and the circumstance of the vagueness of the injunction is to be taken into consideration in any proceedings to punish a defendant for the violation of its provisions.' *Lyon* v. *Botchford,* 25 Hun 58. * * * .''

The reason for preciseness is adverted to in *Ketchum* v. *Edwards* (153 N. Y. 534) where it was said: " But, as punishment for contempt involves, or may involve, not only loss of property but liberty, it is a reasonable requirement that the mandate alleged to be violated should be clearly expressed, and when applied to the act complained of it should appear, with reasonable certainty, that it had been violated.''

It is urged that all defendant had to do to determine whether or not he could solicit a customer or accept business from that customer was to see if that customer had been allocated to him by the arbitrators. This would mean that any time defendant dealt with anyone he must first ascertain at his peril that his prospect was not and had never been a customer of the plaintiff. The better way would have been to list in the interlocutory judgment the names of all customers, dealing with whom was enjoined, thus eliminating all doubt.

The language of paragraph 10 of the interlocutory judgment is involved and its meaning is doubtful. The failure to list the customers and the lack of a definitive date in paragraph 12 are, for the purposes of a contempt proceeding, fatally defective.

The order appealed from does not comply with the provisions of section 770 of the Judiciary Law which would require a reversal. (*Feinberg* v. *Kutcosky,* 147 App. Div. 393; *Matter of Tri-State Investors Corp.* v. *Kitching,* 231 App. Div. 143.)

As we have concluded that the order appealed from must be reversed, we do not consider it necessary to discuss what we regard as an erroneous basis for the determination of the damages claimed to have been sustained by the plaintiffs.

The order insofar as appealed from by the defendant should be reversed, with $20 costs and disbursements, and the motion of the plaintiff Howard S. Tierney, Inc., to punish the defendant for contempt denied, and otherwise affirmed.

TOWNLEY, DORE, COHN and CALLAHAN, JJ., concur.

Order insofar as appealed from by the defendant unanimously reversed, with $20 costs and disbursements, and the motion of the plaintiff Howard S. Tierney, Inc., to punish the defendant for contempt denied, and otherwise affirmed. Settle order on notice. [See 270 App. Div. 753.]