In the Matter of GEORGE M. SPECTOR, Appellant, against WILLIAM ALLEN, a Judge of the Court of General Sessions of the County of New York, Respondent.

Argued May 16, 1939; decided July 11, 1939.

*Martin W. Littleton, John T. Dooling* and *Abner J. Rubien* for appellant.

*Thomas E. Dewey, District Attorney (Murray I. Gurfein and Aaron Benenson* of counsel), for respondent.

LEHMAN, J.   The appellant was served on August 23, 1938, with a subpœna *duces tecum* which commanded him " to appear before the grand jury of the County of New York, at the Grand Jury Room,   *   *   *   FORTHWITH as a witness in a criminal action prosecuted by the People

of the State of New York against John Doe and that you bring with you and produce, at the time and place aforesaid, General Ledgers, General Journals, Cash Receipt Books, Cash Disbursement Books, Cancelled Checks on all banks, Bank Statements, Petty Cash Books, Notes Receivable and Payable Books, Purchase Books, Accounts Receivable and Payable Ledgers, Insurance Record, Copies of Accountants' Reports, from January 1, 1933, to date, now in your custody, and all other deeds, evidences and writings which you have in your custody or power concerning the premises." He has been adjudged guilty of a criminal contempt by the Court of General Sessions pursuant to section 750, subdivision 3, of the Judiciary Law (Cons. Laws, ch. 30) "by reason," so the mandate of commitment recites, " of his wilful disobedience to the lawful mandate of this Court; and further by reason of his failure to produce his records pursuant to a subpoena duly served upon him and the clarification thereof by the Foreman of the Grand Jury."

There is no serious controversy in regard to the conduct of the appellant. He willfully refused to produce before the grand jury a paper which the foreman of the grand jury directed him to produce. He deliberately removed that record from the jurisdiction of the court. He so informed the jury and the court. The serious question presented upon this appeal is whether in so doing he disobeyed a lawful mandate of the court to produce that paper.

At the outset we note that the subpoena in a John Doe proceeding commands the appellant *forthwith* to produce books and " other deeds, evidences and writings which you have in your custody or power *concerning the premises.*" The appellant, not yet informed of the nature of the proceeding which the grand jury was then investigating or even the name of the person who might be charged with the commission of a crime, proceeded promptly to the office of the district attorney. There he was questioned by an assistant district attorney and was told why he was summoned as a witness and the nature of the evidence the grand jury sought from him in its investigation. Though

the record is not clear on that point, perhaps we may infer that he denied having such evidence. At the close of their talk the appellant was directed to appear before the grand jury at ten A. M. on August 25th and the appellant was handed a subpœna to appear before the grand jury at that time, but this subpœna required only the appellant's personal appearance. It did not require him to bring any books or records.

The appellant appeared on August 25th before the grand jury and answered all the questions put to him. He stated that he was engaged in business as an insurance broker and also did " a little financing." Informed that, in the course of the investigation which the grand jury was then conducting, the appellant's name had been connected in the books of a certain corporation with a loan or payment of $47,000 to that corporation, the appellant produced canceled checks and notes purporting to amount to $47,000 which he said were connected with the transaction shown on the books of the corporation. Questioned in regard to his records and books, he stated that he kept no books or regular records; but he admitted that each month when he received his canceled checks he entered upon a " yellow paper " the amounts owing to him for commissions, premiums advanced, or loans. The foreman of the grand jury then directed him to appear on the following Monday and to produce " whatever notes or records or papers or whatever yellow sheets you may have." He was asked by the District Attorney: " Do you understand what we mean by a yellow paper? " He said that he understood and would bring it on Monday, August 29th.

On that day he produced a " yellow paper " but stated that he had torn off the names of the persons with whom he did business. He explained that his bank had shown displeasure because it had received a subpœna to produce his accounts and he feared that if he divulged the names of his clients they might be questioned and as a result his business would be ruined. He admitted that he kept a " duplicate " which showed the names. He was ordered

by the foreman to bring the duplicate the next morning. He appeared the next morning but stated that he had sent the paper to a friend in Massachusetts. Then the foreman of the grand jury directed the District Attorney to bring proceedings to punish the appellant for contempt.

The appellant was brought before a judge of the Court of General Sessions. There the District Attorney dictated what he said " we should call the specifications of this contempt, a copy of which may be served upon counsel for the witness and which will act as the charges under which the witness is here brought." Counsel for the appellant then said: " I must request the court for an adjournment until tomorrow morning in order to prepare this case, and in order to prepare a brief on the law." The District Attorney consented, and the request for an adjournment was granted. Before the court adjourned the District Attorney stated that " as a matter of public policy I do not wish to divulge any further at this time " the details of the investigation by the grand jury. Counsel for the appellant stated that " I shall see that he will have these records here by twelve o'clock tomorrow and I will ask at that time that he have an opportunity to purge himself of contempt."

The court without objection from the appellant's counsel and without request for further adjournment heard the proof the next day. At the close of the hearing he adjudged the appellant guilty of contempt of court and refused to permit the appellant to purge himself of contempt. No complaint may fairly be made of the procedure adopted. It complied with the provisions of section 751 of the Judiciary Law. Though the contempt was not " committed in the immediate view and presence of the court " (Cf. *Matter of Douglas* v. *Adel*, 269 N. Y. 144), the party charged was "notified of the accusation " and had a " reasonable time to make a defense." These statutory requirements are intended to protect the right of an accused to appear and defend himself. What constitutes sufficient notice and reasonable time to make a defense depends upon the particular circumstances of each case. The purpose of the

requirement must never be lost sight of; the rights of an accused must always receive adequate protection. They were fully protected in this case by the procedure suggested by the District Attorney and approved by the court. The accused and his counsel were fully apprised of the nature of the charge and no further details were requested. Amplification of the charge presented, or more exact definition, might have opened the way for technical objections but would not have facilitated a defense on the merits. The accused was accorded the time requested by counsel to prepare his defense. He was ready then and, even now, there is no suggestion that if more time had been extended he would have been able to present his defense more convincingly.

The evidence, indeed, is convincing that he deliberately and willfully disobeyed the order of the foreman to produce the "yellow paper." The court could not reasonably find otherwise and the court did not abuse its discretion by refusal to permit the accused to purge himself of his contempt, if contumacious disobedience of such a command constitutes a contempt. We assume that it sufficiently appears in this case that the paper was material to the investigation that the grand jury was conducting, though the record fails to disclose the nature of the investigation or against whom it was directed. The grand jury must often conduct investigations to determine whether a crime has been committed, before it is possible for the District Attorney to formulate a charge or to point to any particular person. The successful prosecution of crime would be intolerably impeded if a District Attorney could be compelled to divulge, before he is ready, the nature of an investigation by the grand jury or the name of the person or persons suspected. On the other hand, a witness who has been subpœnaed cannot be compelled to give testimony, or to produce evidence, against himself or which is not material to the proceedings. Where he refuses to obey a command to produce evidence he may be punished only if it appears that the evidence was material and could properly have been required of him. District Attorney and court must then

co-operate to insure that the righteous zeal of the prosecutor shall not invade the rights of the witness nor reluctance of a recalcitrant witness hamper unduly the prosecution of crime. We cannot say that in this respect either the court or District Attorney has been at fault.

Where irrelevancy is asserted before a grand jury the witness is of course entitled to a ruling by the court. Then the court must be apprised of the nature of the evidence demanded and of its relation to the subject of the investigation sufficient to enable the court to determine its relevancy. Here the appellant assumed the risk of refusing to produce the evidence without demanding that the court pass upon it in advance or even asserting that it was irrelevant. Nevertheless there can be no punishment for contempt for such refusal unless the court is shown that the evidence demanded may be relevant and proper. That is not in this case wholly a matter of prophecy, as in *Matter of Edge Ho Holding Corp.* (256 N. Y. 374), where there was a motion to quash a subpœna in advance of the hearing. When the appellant refused to produce the yellow paper its bearing on the subject of the investigation was susceptible of intelligent estimate if the setting in which it was placed was sufficiently revealed by the District Attorney. No more need be revealed than would be sufficient to permit " intelligent estimate." In this case the District Attorney gave the information which he deemed sufficient for that purpose, withholding other information in the public interest. The witness and his counsel did not challenge the sufficiency of the information which the District Attorney offered, or seek to obtain more information, and in those circumstances we may assume its sufficiency.

The fatal weakness in the adjudication for contempt lies not there but in the fact that the appellant received no subpœna requiring him to produce the yellow paper either on August 25th or August 29th, nor did he disobey any other mandate of the court. The acts which may constitute a contempt are specified in section 750 of the Judiciary Law " *and no others* " are punishable as criminal contempts

by a court of record. Included in the acts so specified is " 3. Wilful disobedience to its lawful mandate." The question is whether the accused received a lawful mandate *of the court* to produce the yellow paper before the grand jury on August 25th or August 29th or August 30th. A subpœna *duces tecum* issued by the District Attorney is a mandate of the court, and disobedience of the subpœna may be punished as a contempt (*People ex rel. Drake* v. *Andrews*, 197 N. Y. 53), but the appellant did not disobey that mandate. Punishment for a criminal contempt is a drastic remedy for willful wrong. The mandate must be clear before disobedience can subject a person to such punishment. Here the subpœna *duces tecum* did not command the witness to appear before the grand jury at ten A. M. on August 25th but to appear " forthwith " and to produce his books. It is said by the District Attorney that the word " ' forthwith ' must be held to give the witness a reasonable time, in the circumstances, to produce the books, and the district attorney a reasonable time, in the circumstances, to present the witness before the Grand Jury." We assume, though only *arguendo*, that the word should be so construed, yet it still remains true that there is no proof here that the command was disobeyed.

The appellant did appear forthwith on August 23d, the same day that he was served. An oral direction by the District Attorney to appear again on August 25th is not a mandate of the court. It could not change a command to appear " forthwith " into a command to appear at a definite time two days later. To insure the attendance of the appellant on August 25th the District Attorney served a new subpœna. The direction in the original subpœna to produce " accounts receivable and payable ledgers " would hardly give notice to a witness, who does not even know the nature of the investigation or against whom it is directed, that he should produce the single sheet memorandum on which the appellant had written the amounts due to him from different persons. The new subpœna, in any event, did not require the production of any papers.

The grand jury is an arm of the court, but it is not the court. Its foreman has no authority to issue a " mandate " of the court within the meaning of section 750 of the Judiciary Law. It is said, however, that even if that be true the foreman could " clarify " the subpœna *duces tecum* by direction to bring a particular paper. Neither oral direction by the District Attorney nor oral clarification by the foreman of a grand jury can change or enlarge the command of the subpœna. The subpœna must be in writing, and only disobedience of the written command is subject to the drastic punishment meted out for a criminal contempt. It seems plain for these reasons that the appellant never received a mandate of the court to produce the yellow paper and disobedience of the directions of the District Attorney or the foreman is not punishable as a contempt.

The defect here is not purely formal or technical. To protect the liberty of the individual from possible abuse of power, punishment for contempt is hedged about with restrictions and subject to regulations imposed by the Legislature. Disobedience only of mandates of the court given in accordance with law are subject to such punishment. The command must be clear; disobedience must be willful. Guilt arises only where the authority of the court is flouted. Formality in giving the command may bring home to a person the importance of obedience. In this case the appellant promptly produced the desired paper when he was convinced that failure to do so might result in his punishment. We cannot say that he would not have produced it earlier if the District Attorney, after learning of the existence of the paper, had served upon him a subpœna commanding him in plain language to produce it.

The order of the Appellate Division should be reversed and the determination of the judge of the Court of General Sessions annulled.

FINCH, J. (dissenting). I dissent on the ground that where a witness receives a subpœna to produce " accounts receivable and payable ledgers," he should not be able to fail to produce sheets containing his list of accounts receiv-

able particularly where the witness later admitted that he considered that these sheets were his "receivables," and where it further appeared that such sheets were the only records of the witness' business.

CRANE, Ch. J., LOUGHRAN and RIPPEY, JJ., concur with LEHMAN, J.; FINCH, J., dissents in memorandum in which HUBBS, J., concurs; O'BRIEN, J., taking no part.

Order reversed, etc.