Gerald P. Culkin, J.
Defendant moves to dismiss the four counts of this indictment which was rendered by the Fourth Grand Jury of the County of New York for the April 1970 Term. This indictment, rendered on July 30, 1970, charges two counts of perjury in the first degree (violation of Penal Law, §§ 210.15, 210.20) and two charges of criminal contempt (violation of Penal Law, § 215.50).
*393 This Fourth Grand Jury, empanelled for the April 1970 Term, has been, inter alia, -conducting an investigation to determine whether certain members of the New York City Police Department had conspired with others to receive payments of money in return for transmitting certain confidential information which had been obtained by the Police Department, thereby enabling circumvention and otherwise obstructing the enforcement of the penal statutes against illegal gambling and loan-shark operations.
The Grand Jury minutes reveal that this defendant, after stating that he ‘ ‘ would like to speak to an attorney ’ ’ on the first day he was called, June 4, 1970, was advised that he was called exclusively in the role of a witness and was imipediately thereafter granted immunity. After finishing his testimony on June 4, 1970, he was recalled on June 9 and again on June 11, 1970.
At the outset, it should be noted that the minutes, as submitted, are not in chronological order, as it appears that several pages are not present. It is therefore difficult to determine whether these pages (2226 to 2233 and 2300 to 2322) are relevant.
• The court will first consider count 3 and count 4 of this indictment, charging this witness with criminal contempt. The purpose of a Grand Jury investigation is to “inquire of crimes committed or triable in the county” (Code Crim. Pro., § 223). In so doing, however, a Grand Jury has the duty to protect the rights of witnesses in regard to due process under the Fourteenth Amendment of the United States Constitution and to protect citizens against the misuse of government power (cf. People v. Seward, 51 Misc 2d 415, 417).
In the instant case, after the witness testified before the Fourth Grand Jury, which was properly exercising its investigatory powers, this same Grand Jury indicted this witness for alleged contemptuous conduct. Acting as “ an arm of the court ” (Matter of Spector v. Allen, 281 N. Y. 251, 260), Grand Juries are subjected to all the constraints that have been placed upon our courts, and more especially by a most recent decision by the Supreme Court of the United States wherein a judgment of contempt was vacated and remanded to another Judge because prosecutors should not be Judges of the charges they prefer. Fair trials are too important to our free society. “Whether the trial be federal or state, the concern of due process is with the fair administration of justice.” (Mayberry v. State of Pennsylvania, cited in 8 Crim. Law Rep. 3065, 3068 [Jan. 20, 1971]). Further, in the case of Matter of Murchison (349 U. S. 133,136-137) the United States Supreme Court held that a “ judge-grand *394 jury ’ ’ could not try the same person for alleged contemptuous acts committed before the same “ judge-grand jury ” (see, also, Matter of Oliver, 333 U. S. 257).
Although the facts in the cases heretofore cited evolved around somewhat different problems, the constitutional rights considered are very much applicable to the instant case. This Fourth Grand Jury has, in effect, acted as a petit jury. It considered the witness’ testimony and his demeanor and decided the ultimate issue without benefit of the procedural safeguards fundamental to our system, as set forth in the cases stated above.
Defendant’s motion, therefore, to dismiss the third and fourth counts of this indictment (criminal contempt, violation of Penal Law, § 215.50) is granted. Consequently, the alleged testimony submitted in support of these two counts is not herein considered, since such is moot.
The court now considers the first and second counts of the indictment, each of which charges this witness with the crime of perjury in the first degree.
A reading of the minutes indicates, as stated above, that the witness at the very outset, at the hearing on June 4, 1970, asked to speak to an attorney. In answer to his request, he was immediately granted status as a witness and granted immunity. The witness was then informed that because of the immunity, although he was still legally obligated to answer all questions, his answers “ will immunize you from prosecution for whatever crimes your answer may disclose ”. This he, the witness, found to be satisfactory because of the trend of the questions, but he queried as to his “right to confer with an attorney later on.” Whereupon the District Attorney apprised the witness that if he, the witness, did not feel that the questions to be presented were relevant and proper, then he had a right to consult with an attorney. Superimposed upon this advice, the District Attorney also offered the following: “ If you feel as a police officer that the questions are proper, you appreciate you are legally obligated to answer those questions.”
It is apparent from the answers given by the witness that he went along with the advice offered by the District Attorney, and consequently was misled as to his obligation to answer questions put forth because of his status “asa police officer ”. This characterization of the witness could possibly have also misled the Grand Jury as to the propriety of the witness’ obligation to answer questions.
*395 The mere fact that the defendant was a police officer had no bearing on his legal duty to answer questions, nor upon his legal right to refrain from answering improper questions, which could only be explained to him by counsel or by the court. The record further indicates that the defendant subsequently made another request to confer with counsel.
The first count of the indictment, charging the crime of perjury, states, in part, that “ On June 9, 1970 the defendant testified that he had received payments of money monthly for a period of months. On June 11, 1970 the defendant testified that he received a payment of money only on one occasion.” This said count fails to allude to any specific part of the witness’ testimony. However, a careful perusal of the Grand Jury minutes indicates that this charge, as well as the second count, is somewhat vague. While it is true that, in his apparent confusion, the witness did state that on June 9, 1970, he received payments for several months and that on June 11,1970 he stated that he received a payment on only one occasion, after the latter statement was made he again reiterated that he received payments over several months. The indictment, therefore, is not consistent with the record as to this count, as well as to count two.
Count two charges: “ The defendant testified on June 9, 1970 that he received cash from different police officers. The defendant then testified on June 11,1970 that he had not received money from different police officers but just from one police officer, who is now dead.”
Assuming it was the witness’ testimony of June 9, 1970 (without being certain because of the form in which the record was presented to this court), we find the following colloquy at page 2292:
“ Q. Who gave you the cash? A. It’s a long way back—
“ Q. You don’t remember? After all ’ 63, ’64 is not that long, who gave you the cash? A. It’s — to me, it’s one of the cops.
“ Q. You know it’s one of the cops, tell us the name of the cop who gave it to you. A. I don’t remember the name.” However, immediately thereafter, on the same day, the witness was asked the following questions and gave the following answers:
“ Q. It was the same man who gave you this cash. A. No, I don’t think so.
“ Q. Different cops gave you this cash? A. Yes.”
*396 Returning to the possibility that only one police officer may have been involved, the witness was presented with the following question:
“ Q. I ask you once more; tell us the name of the police officer who gave you the money. A. I don’t remember * *
As of June 9, 1970, therefore, there was confusion as to the witness’ testimony in regard to the number of police officers he allegedly accepted money from in 1963-1964. The same was also true on June 11, 1970, viz.:
“ Q. Different cops gave you cash? A. Yes. [Reading testimony given on June 9, 1970] w w
“ Q. Are those answers true now, as you sit there is it your testimony those answers are not true? A. Yes. I was mistaken when I said that. w w
“ Q. Did you say it was different cops who gave you money last time? A. No.
“ Q. You deny that? A. If I said it I am mistaken.”
It must be noted that three different assistant district attorneys were questioning the defendant. The minutes indicate that there is no doubt that the defendant was confused at times by such questioning. In addition thereto, the records further indicate that the assistant district attorney characterized parts of defendant’s testimony, which might have very well prejudiced the Grand Jury. Courts have a particular responsibility to prevent unfairness in grand jury proceedings, for the grand jury is an “ arm of the court ” (see, e.g., Matter of Spector v. Allen, 281 N. Y. 251, 260, supra). Grand jurors must be free to exercise their judgment without any influence or control. The District Attorney is a quasi-judicial officer and must not attempt to sway them one way or another (see 38 Am. Jur. 2d, Grand Jury, p. 979 ; Ann. 4 ALR 2d 414).
For all the aforesaid reasons, the first and second counts of the indictment must likewise be dismissed.
(March 23, 1971)
The court feels constrained to elaborate on its determination of February 22, 1971.
The purpose of the defendant’s appearance before the Grand Jury was to give evidence in an investigation, as the People’s witness, after having been granted immunity. As may be seen from the caliber of the questions put to him by three assistant district attorneys, the questions were not designed to elicit information on the subject of investigation but rather to confuse *397 the witness and prejudice the Grand Jury in its ultimate determination as to whether or not the witness was to be indicted for the crimes of perjury and contempt. Therefore, the court in its original decision attempted to subtly demonstrate that the witness was not accorded fair treatment in his appearance before the Grand Jury and in contravention of his constitutional rights. However, the District Attorney’s office has publicly stated that the original decision, among other things, was ‘ ‘ vague and uncertain ’ ’; therefore, let us be more explicit, or, should it be more implicit.
Section 255 of the Code of Criminal Procedure provides in part as follows: ‘ ‘ § 255. When and from whom they may ask advice, and who may be present during their sessions. * * *
3. * * * The district attorney of the county, an assistant district attorney, or in the county of Hew York, or in the county of Kings, or in the county of Bronx, an attorney regularly in the employ of the district attorney of the said counties, who shall be under salary paid by the said counties and who shall have filed in the office of the county clerk of the said counties the constitutional oath of office, or in counties having no assistant district attorney an attorney appointed by a justice of the supreme court upon the nomination of the district attorney to attend upon the grand jury, * * * but no district attorney, attorney general, officer or other person shall be present with the grand jury during the expression of their opinions or the giving of their votes upon any matter. ’ ’
As may readily be seen from this section, the law is crystal clear that the legislative intent was to have the People represented in the person of the District Attorney before the Grand Jury. It did contemplate having more than one assistant attorney present during the Grand Jury proceeding and interrogation of a witness.
In this case the record reveals that there were three assistant district attorneys simultaneously present and participating in the interrogation of the witness. This court feels that the very presence of three assistant district attorneys in the Grand Jury room in and of itself, let alone participating in interrogating the witness, was prejudicial and violative of the spirit and indeed word of the law. Perhaps the law should be changed to require a quorum of assistant district attorneys present along with a quorum of the grand jurors (Code Crim. Pro., § 224).
Due process requires an orderly procedure, substantial justice, a hearing conducted before an impartial jury; and to quote from a decision in the much maligned State of Mississippi, “An *398 átomo sphere of calm, in which witnesses can deliver their testimony without fear and intimidation”. (Floyd v. State, 166 Miss. 15, 39.)
A reading of hut one page of the Grand Jury minutes (p. 2337) exemplifies the prejudice to the witness in the manner in which the questions were propounded. The witness’ appearance before the Grand Jury was to provide information, but the way the questions were worded prejudiced the Grand Jury in its ultimate determination as to whether or not the witness should be held to answer for the crimes of contempt and/or perjury.
“ Q. Did you tell your attorney what you testified to before this Grand Jury?
“A. Yes, I did.
“ Q. Did you tell him you told the truth or that you lied?
“A. I told him what I testified to.
“ Q. What did he say to you?
“ A. He said, ‘ you have immunity and see what happens ’.
“ Q. Did you tell your lawyer you did not testify truthfully last time?
“A. I wasn’t aware I didn’t testify truthfully.
“ Q. When did it first occur to you that you did not testify truthfully last time?
“ A. I didn’t .remember what I said the last time when I left there.”
Included in the above are all types of innuendos and subtleties presented to a naive jury, the implication being that the questioner had spoken to the witness’ lawyer, that in fact he, the witness, was telling a lie, and in point of fact the questioner was testifying to that fact.
It is hoped that the Legislature, Bar Associations, civil rights and civil liberties organizations will see fit to press for appropriate legislation in the manner in which a Grand Jury investigation should and may be conducted.