OPINION OF THE COURT
Harold J. Rothwax, J.
The defendant, Lloyd Paperno, has been indicted, in eight counts, for criminal contempt in the first degree. The indictment alleges that the defendant gave evasive, equivocal, conspicuously unbelievable and patently false testimony in three appearances before the June 6, 1977 Grand Jury. The defendant testified as an immunized witness. The Grand Jury was investigating allegations of official misconduct in the Supreme Court, Civil Term, at 60 Centre Street.
The defendant has filed an omnibus motion toc dismiss the indictment. He contends that the statute (Penal Law, § 215.51) was not directed at contempt of the evasive sort. He maintains that the statute, as applied to evasive contempt, is unconstitutionally vague. He also asserts that the Grand Jury proceedings were marred by numerous prejudicial procedural and substantive errors.
CONSTITUTIONALITY OF SECTION 215.51 OF THE PENAL LAW
The defendant was indicted under that section of the statute which declares: "A person is guilty of criminal contempt in the first degree * * * when after having been sworn as a witness, before a grand jury, he refuses to answer any legal and proper interrogatory.” (Penal Law, § 215.51, as added by L 1970, ch 734.)
The refusal to answer, which is punishable as criminal contempt, has never been limited to absolute silence, as the defendant contends. A witness’ answers which are deliberately uninformative may be as contemptuous as silence (People v Ianniello, 36 NY2d 137, 142; People ex rel. Valenti v McCloskey, 6 NY2d 390, 398). This has always been the law. Blackstone noted that among the acts punishable as criminal contempt at common law were, "Those committed by witnesses: by making default when summoned, refusing to be sworn or examined, or prevaricating in their evidence when sworn.” The witness who "willfully and obstinately refuses to answer, or answers in an evasive manner” was "clearly *101 guilty” of contempt at common law (Blackstone’s Comm [Chase’s 2d ed], pp 993-995; emphasis added).
This principle was codified in the earliest Penal Code of New York State, by the phrase "unlawful refusal * * * to answer any legal and proper interrogatory” (2 Rev Stat of NY, part III, ch III, tit II, § 10, subd 5; Code Civ Proc, § 8, subd 5). This phrase has been retained in every subsequent revision of the Penal Law (former Penal Code, § 143, subd 6; former Penal Law, § 600, subd 6; Penal Law, § 215.50, subd 4; § 215.51; see, also, Judiciary Law, § 750, subd 5). These statutes have been applied with equal force to Grand Jury proceedings as well as to proceedings before a court or a petit jury (People ex rel. Hackley v Kelly, 24 NY 74, 78; Bergh’s Case, 16 Abb Prac [NS] 266; People ex rel. Phelps v Fancher, 4 Thomp & C 467, 470).
There is no evidence that the Legislature intended to modify a century and a half of statutory and case precedent when it enacted section 215.51 of the Penal Law in 1970. The legislative purpose in enacting this section was to conform the Penal Law to the new CPL, by omitting reference to grants of immunity. The CPL replaced the selective immunity provisions of the former Code of Criminal Procedure (§ 619, subd [d], par 2) with an automatic grant of immunity by statute, for all Grand Jury witnesses (CPL 190.40, subd 2). Section 215.51 of the Penal Law was derived from subdivision 4 of section 215.50 of the Penal Law, which punished the "[contumacious and unlawful refusal * * * [of] a witness in any court proceeding * * * to answer any legal and proper interrogatory” as a misdemeanor. The Legislature elevated testimonial contempt of the Grand Jury to a felony, to dissuade those who might otherwise seek the benefit of automatic immunity without assisting the Grand Jury’s investigation (see Governor’s Memorandum of Approval, NY Legis Ann, 1970, p 514).
Our courts have recently and expressly upheld the constitutionality of section 215.51, as applied to evasive contempt (People v Gross, 58 AD2d 963). The defendant bears a heavy burden when he seeks to rebut the statute’s presumptive constitutionality (see, e.g., People v Davis, 43 NY2d 17, 30). Due process requires that a criminal statute meet two criteria of specificity. First, the statute must give "fair notice” to a person "of ordinary intelligence” that his conduct is proscribed (United States v Harriss, 347 US 612, 617). Second, the statute must avoid "resolution on an ad hoc and subjective *102 basis” of the cases that fall within it, by providing "explicit standards” for those who are charged with enforcing it (Grayned v City of Rockford, 408 US 104, 108-109; People v Smith, 44 NY2d 613). In applying these criteria, a court must read the challenged statute with the full content of previous judicial interpretation (United States v Harriss, supra, p 618).
It is clear that a witness’ "primary duty” is " 'to speak the truth, the whole truth and nothing but the truth’ touching the subject-matter” of his testimony (People ex rel. Jones v Davidson, 35 Hun 471, 475). As Judge Learned Hand noted, in United States v Appel (211 F 495): "It is indeed impossible logically to distinguish between the case of a downright refusal to testify and that of evasion by obvious subterfuge and mere formal compliance.” In either case, the witness has not "disclose[d] his knowledge of the subject” under investigation (People v Hicks, 15 Barb 153, 165), which is the plain meaning of the phrase "to answer” in a court of law.
In addition to the plain meaning of the statute, the defendant here received actual notice of his rights and duties as a witness. Prior to any questioning, the prosecutor explained to the defendant that he testified under a statutory grant of immunity (CPL 190.40, subd 2; 50.10). The transactional immunity thus conferred was explained to the defendant correctly and in simple terms. The immunity was fully coextensive with the defendant’s privilege against self incrimination (Matter of Anonymous Attorneys, 41 NY2d 506, 510). The defendant was further advised that his immunity did not extend to prosecution for perjury or contempt. The crimes of perjury and of contempt by silence and by evasion were clearly explained to the defendant. Examples were given. The defendant testified that he understood the scope of his immunity and his continued liability for perjury and contempt. These warnings were repeated periodically when the defendant seemed to equivocate (People v Rappaport, 60 AD2d 565, mot for lv to app granted 43 NY2d 931; People v Cutrone, 50 AD2d 838). The warnings were, in effect, an explication of the statutory phrase "to answer a legal * * * interrogatory”, which means any question that does not require the witness to divulge information privileged by law (People v Ianniello, 36 NY2d 137, 145, supra; see Matter of Morse, 42 Misc 664, 666).
The statute was effectively defined for the defendant by the District Attorney, which is more in the way of notice than due process ordinarily requires.
*103 The standards by which testimony is to be evaluated for responsiveness or evasiveness are well established by judicial construction. The only "proper test [for evasiveness] is whether on its mere face, and without inquiry collaterally, the testimony is not a bona fide effort to answer the questions at all.” (United States v Appel, supra, p 496.) If the witness "directly responds with unequivocal answers which are clear enough to subject him to a perjury indictment, then he has made a 'bona fide effort to answer’ and may not be [prosecuted] for refusing to answer” (People ex rel. Valenti v McCloskey, 6 NY2d 390, 403, supra; emphasis omitted). The "technique” of evasive testimony has been described as "avoiding giving information and yet sidestepping the perils of perjury” by "characterization[s] of probability or even possibility and never with the assertion of certainty or [any] reasonable degree of assurance” (People v De Feo, 284 App Div 622, 624, revd on other grounds 308 NY 595).
Evasive testimony falls generally into two categories: that which is patently frivolous, and that which is patently false. Testimony of the first sort is "so frivolous upon its face that it does not constitute an answer at all”; as where "the answer [is] so absurd that mere inspection makes it necessary to conclude that the witness did not intend his answer to be seriously considered” (Matter of Finkel v McCook, 247 App Div 57, 67 [dissenting opn]). The witness who recited nursery rhymes before the Grand Jury would be guilty of contempt of the patently frivolous kind. Testimony of the second sort is that "which is so plainly inconsistent, so manifestly contradictory and so conspicuously unbelievable as to make it apparent from the face of the record itself that the witness has deliberately concealed the truth and has given answers which are replies in form only” (Matter of Finkel v McCook, supra, p 63 [majority opn], affd 271 NY 636). The witness who testified "that he did not remember where he had slept the night before, if he was sane and sober, or that he could not tell whether he had been married more than a week” would be guilty of contempt of the patently unbelievable kind (United States v Appel, supra, p 496; Matter of Foster v Hastings, 263 NY 311, 314; People v Saperstein, 2 NY2d 210, 217, cert den 353 US 946; People v Ianniello, 21 NY2d 418, 427, cert den 393 US 827; People v Martin, 47 AD2d 883).
The responses alleged to be evasive must be examined in light of the questions asked, so that the witness is not held *104 criminally liable for his interrogator’s imprecision or confusion (Matter of Steingut v Imrie, 270 App Div 34). The questions must be relevant to the scope of the Grand Jury’s investigation (People v Ianniello, 36 NY2d 137, 145, supra) and "free from ambiguity and so plain as to call either for a direct answer or a refusal to answer on grounds [of privilege]” (Matter of Morse, 42 Misc 664, 667, supra; People v Marinaccio, 90 Misc 2d 128, 133). This principle is codified by the statutory phrase "proper * * * interrogatory.”
It only remains to be noted that the mens rea element of testimonial criminal contempt is the intentional violation of the duty to answer (Sinclair v United States, 279 US 263, 299; People v Tantleff, 40 NY2d 862; People v Breindel, 73 Misc 2d 734, 738). Criminal contempt has historically been distinguished by the element of "willfulness” (Blackstone’s Comm [Chase’s 2d ed], p 994; People ex rel. Gaynor v McKane, 78 Hun 154, 161; People ex rel. Sherwin v Mead, 92 NY 414, 420). Although its meaning varied with its context at common law (see United States v Murdock, 290 US 389, 394-395), "willful” in the context of criminal contempt meant an act done without any basis for believing that it was lawful (People ex rel. Munsell v Court of Oyer & Terminer of County of N. Y., 101 NY 245). In the context of testimonial contempt, the witness who believes that he has a lawful basis for refusing to answer must assert the basis for his belief and obtain a judicial ruling (People v Ianniello, 21 NY2d 418, 425; Gihon v Albert & Shaw, 7 Paige Ch 278, 279). The person who refuses to testify, after having been advised of his duty as a witness, without having articulated a reason for his refusal, may be assumed to have acted deliberately and not out of misapprehension of his legal rights (People v Ruggiano, 39 AD2d 113, 114; People v Ianniello, supra). No court has ever required proof, in a case of testimonial contempt, of a specific intent to obstruct justice. Cases which have held that perjury alone may not be punished summarily as criminal contempt, require in addition to the false swearing a "circumstance or condition giving to it an obstructive effect” (Matter of Hudgings, 249 US 378, 384; Matter of Michael, 326 US 224; Temple v United States, 386 US 961; cf. Bernheimer v Kelleher, 31 Misc 464). In the context of a Grand Jury investigation, which is a nonadversarial pursuit of facts, an intentional refusal to give responsive answers has a necessary and foreseeable obstructive effect.
*105 The court accordingly finds that the criminal contempt statute (Penal Law, § 215.51) is constitutionally specific, provides fair notice and intelligible standards which may be applied consistently in every case.
There is no basis for the defendant’s claim that the prosecutor was compelled to pursue the "least drastic alternative” in obtaining his testimony. While the prosecutor could have sought a court directive that the defendant testify responsively, which would have been enforceable by summary proceedings for contempt under the Judiciary Law (§ 750, subds 4, 5; § 751) (People ex rel. Cirillo v Warden, 11 NY2d 51), such a procedure has never been required or even preferred (People ex rel. Sherwin v Mead, 92 NY 414, 419, supra). A proceeding under the Judiciary Law to punish a criminal contempt may, in fact, bar indictment under the Penal Law for the same offense (see People v Colombo, 31 NY2d 947).
The two procedures are designed to serve different purposes. The Judiciary Law prescribes summary proceedings for both civil (Judiciary Law, § 753) and criminal contempts. Summary civil contempt requires proof of injury to the interests of an individual litigant, and exists to indemnify the party wronged (Judiciary Law, § 770). Summary criminal contempt requires proof of a willful or intentionally malevolent interference with the decorum or mandate of an individual court (People ex rel. Munsell v Court of Oyer & Terminer of County of N. Y., 101 NY 245, supra). Summary criminal contempt is used to restore order in an ongoing judicial proceeding (Judiciary Law, § 755; 22 NYCRR 604.2 [a]) or to punish violations of court orders (Judiciary Law, § 757; 22 NYCRR 604.2 [b]). The summary proceeding is used when expedition is sought or required (People ex rel. Backus v Spalding, 7 Hill 301) and it permits punishment by fine or imprisonment for no more than 30 days (Judiciary Law, §§ 751, 774). Both forms of summary contempt have a coercive aspect. The witness who is summarily committed for refusal to testify as a criminal contempt may be ordered anew to testify after his initial commitment has expired (Matter of Second Additional Grand Jury v Cirillo, 12 NY2d 206). It is also possible that summary criminal contempt, like civil contempt, may be purged (People v Leone, 44 NY2d 315, 318).
An analogous distinction exists between summary criminal contempt and the crime of contempt (Penal Law, §§ 215.50, 215.51). The former exists to vindicate the authority of an *106 individual court, whereas the latter serves to vindicate the public’s interest in the administration of justice generally (People v Leone, supra, p 317). Courts have long recognized that the public justice is particularly vulnerable to frustration by witnesses who intentionally conceal evidence of wrongdoing (see, e.g., Matter of Taylor, 8 Misc 159). Accordingly, criminal contempt has historically been an indictable offense (2 Rev Stat of NY, part III, ch III, tit II, § 15; former Penal Code, § 143; former Penal Law, § 602). At common law, it was a "high misprision” to. contemn the King’s Courts by "the concealment of something which ought to be revealed” (Blackstone’s Comm [Chase’s 2d ed], p 897 et seq.). Correspondingly greater penalties have always attached in plenary contempt proceedings.
Therefore, the prosecutor did not abuse his discretion by electing to proceed by way of indictment for criminal contempt (Penal Law, § 215.51). Nor is there any constitutional impediment to a legislative scheme that allows the prosecutor to pursue alternative remedies for the same wrongful conduct (People vEboli, 34 NY2d 281).
For the foregoing reasons, the motion to dismiss the indictment is denied in all respects.
[Portions of opinion omitted for purposes of publication.]