OPINION OF THE COURT
Melvin D. Glass, J.
During the course of a major arson trial, a witness called by the prosecution was sworn but refused to testify. She had testified before the Grand Jury investigating the matter without having signed a waiver of immunity, thereby receiving transactional immunity by operation of law. Her refusal to testify was met by a direction of the Justice presiding at the trial to arrest her for criminal contempt in violation of section 215.50 of the Penal Law. This was accomplished by the prosecutor. Some five days later the witness was recalled to the stand and given an opportunity to purge herself. She refused once again to testify. The nonjury trial before this court for the charge of criminal contempt resulted from that action.
The refusal of a witness to testify can be dealt with by the court under subdivision 5 of section 750 of the Judiciary Law where the witness can be held in summary contempt and a maximum sentence of 30 days can be imposed. This type of procedure should be employed when the contemptuous activity is absolutely clear and the behavior is primarily an affront to the court. (People v Leone, 44 NY2d 315, 317.) When there is some question about the guilt of *481 the witness or when the affront is directed toward the community in general by obstructing the fact-finding process of a trial, the proper procedure is to deal with the witness through a prosecution under section 215.50 of the Penal Law. (People v Paperno, 98 Misc 2d 99, 105.) A conviction under that section carries a maximum prison sentence of one year.
It is respectfully suggested that the Trial Justice in the arson matter correctly considered the Penal Law section as a sanction inasmuch as the result of the witness’ refusal to testify was the possible frustration of the fact-finding process in a matter which was of the utmost importance to the community.
The contempt trial found both sides concentrating on a resolution of the defendant’s intent at the time of her refusal to testify. She contended that she believed at the time that she was merely asserting her privilege against self incrimination and could not be forced to relinquish her constitutional rights. It was her contention that her belief, albeit mistaken, that she could be prosecuted for the arson, was a valid defense to a contempt prosecution since she did not intend any disrespect for the court.
The prosecution had attempted to show at the trial that the defendant had refused to testify because she had a change of heart. One of the defendants in the arson case was her common-law hhsband, the father of her child. Although she had previously testified against him in the Grand Jury, her position had changed at the time of the trial. The People argued that she had attempted to protect him by refusing to testify. Almost overlooked is a legal question which must be answered before the factual issue of intent , can be reached. Are the elements needed to support a conviction for criminal contempt found within the trial record of the arson case?
The appropriate portion of the Penal Law (§ 215.50, subd 4) provides that it is criminal contempt to engage in the “[c]ontumacious and unlawful refusal to be sworn as a witness in any court proceeding or, after being sworn, to answer any legal and proper interrogatory”. The information filed by the District Attorney charges that the defendant committed this crime on December 3, 1980.
*482 A close reading of the minutes for that date reveals that the defendant, who was represented for several months by counsel, was called to the stand by the prosecutor at a time when her attorney was not present. She was sworn and was asked whether she had told the truth when she had testified before the Grand Jury. The defendant refused to testify. At that point there was an objection by one of the defense attorneys and a long colloquy followed. It was discovered that the defendant was refusing to testify because her attorney was not present. The Trial Justice, recognizing this as a legitimate basis for a continuance, excused the witness until her attorney was available. After the passage of some time, the attorney arrived.
The defendant was recalled to the stand and responded that she recognized that she was still under oath. She was not asked a question regarding the arson charge on trial. Instead, inquiry was directed at whether she would testify. She indicated her refusal to do so. She was never asked a “legal and proper interrogatory” nor was an attempt made to ascertain why she was refusing to testify. Instead, she was told she was subjecting herself to a prosecution for criminal contempt and the Trial Justice directed that she be so prosecuted. No further effort was made to question the witness on December 3.
The posing of a “legal and proper interrogatory” is vital to this prosecution for criminal contempt. (People v Ianniello, 36 NY2d 137, 143, 145.) A criminal contempt prosecution, such as the one before the court, must involve either a refusal to attend under subpoena, or a refusal to be sworn, or a refusal to respond to a “legal and proper interrogatory”. In this case, the witness appeared and was sworn. The basis for the prosecution must rest upon a contumacious refusal to answer legal and proper questions posed.
The willful conduct contemplated by the contempt statute may be acts of commission or omission, but in any case the prohibited behavior must justify a belief that there was a deliberate intent to either question or defy the authority of the court, offend its dignity, or evade its mandate, so as to interfere with the due administration of justice. (People v Solomon, 150 Misc 873.)
*483 Where a refusal to answer questions posed is the basis for prosecution, the relevancy and materiality of the questions asked is in issue. That is because the nature of the question evaded reflects upon the intent to obstruct the fact-finding process, to defy authority, and to cause an affront to the community thereby. (Matter of Spector v Allen, 281 NY 251; Matter of McDonald v Colden, 181 Misc 407, affd 267 App Div 881.) The legality and propriety of a question asked must be passed upon by the trial court and is subject to review when the sanction of contempt is exercised. The severity of the sentence imposed is oftentimes measured by the importance of the question which gave rise to' the contempt. (Matter of Spector v Allen, supra.)
It can be argued that the question which was not answered by the witness had been posed to her in the absence of her attorney and that her refusal to answer was made when her lawyer was present. That, however, overlooks the fact that the Trial Justice regarded the lawyerless session as a virtual nullity when he postponed the proceeding until the witness’ attorney arrived. This was not an ordinary witness. This was one who could have been prosecuted for the very crime about which she was being called to testify. It was of the utmost importance that she be represented by her own counsel.
After having been sworn, the witness’ only concern was having her attorney present. The question asked of her was followed by an immediate objection by one of the defense attorneys. That was followed by a colloquy regarding the prosecutor’s good faith in putting the witness on the stand. When the witness’ attorney was present, the question was never repeated, nor was the witness asked to answer the previous question. She was merely asked whether she was going to testify.
The People stress that it would have been fruitless to ask the witness a question in the presence of her attorney when she was recalled to the stand because the jury had been excused. This position is without merit. As indicated, the asking of the question was necessary to establish a basis for a contempt prosecution if the witness had refused to respond. In addition, if the witness had answered a legal *484 and proper interrogatory outside of the presence of the jury, the prosecutor would have been justified in repeating the question of the witness in the jury’s presence. The absence of a legal and proper question put to the witness causes the contempt prosecution'to fail.
The defense failed to raise the legal defect at the close of the People’s case. It was pointed up for the first time in counsel’s memo in support of his motion for acquittal at the close of the entire case. The prosecutor became aware of that contention upon receipt of counsel’s memo. He was given an opportunity to respond. This court will treat this legal contention as a motion to reargue counsel’s application for a trial order of dismissal at the conclusion of the People’s case. That application is granted. The information is dismissed.