Edgar J. Nathan, J.
A witness before the Grand Jury who has been committed for criminal contempt of court applies for a certificate of reasonable doubt, or, in the alternative (by stipulation made upon the record at the argument), for an order pursuant to article 78 of the Civil Practice Act vacating the mandate of the Court of General Sessions summarily adjudging the witness in contempt and committing him to the workhouse for 30 days. Request is also made for an interim stay of execution of the mandate.
The proceedings arise from an investigation by the Grand Jury of a suspected conspiracy to commit murder. The witness, who was the intended victim, was at no time arrested or charged with any crime or offense in connection with the attempted homicide or the subject of the instant Grand Jury investigation. During the course of his testimony before the Grand Jury, he was confronted with a photostat of a document which had been illegally obtained by police officers in the course of an unlawful search of the witness’ clothing while he was being treated at Roosevelt Hospital immediately after the attempt on his life. The original document was returned to him upon his demand. When questioned concerning this document, the witness refused to answer upon the ground that his answers may tend to incriminate him. At the instance of the assistant district attorney conducting the investigation, the foreman of the Grand Jury pressed for answers under a grant of immunity from prosecution pursuant to section 2447 of the Penal Law, as to which the witness had been fully advised. The witness again refused to answer, and he was taken before a Judge of the Court of General Sessions where a request by his counsel for further time to consider the matter was denied. The witness was thereupon directed to return to the Grand Jury room and answer the questions. Upon his continued assertion of constitutional privilege and refusal to answer, he was again brought before the Court of General Sessions where, after pertinent portions of the Grand Jury minutes were read, and after he again refused to answer in response *68 to inquiry by the court, the witness was summarily found guilty of contempt of court and committed to the workhouse for 30 days.
An appeal taken by the witness from the mandate adjudging him in contempt and committing him is pending in the Appellate Division. Meanwhile the witness has been confined in the workhouse.
The primary question presented in this proceeding is whether the grant of immunity is sufficiently broad. The argument that the immunity granted was limited in scope by the assistant district attorney or the foreman of the Grand Jury is untenable. The immunity is statutory and protects a witness from prosecution “ for or on account of any transaction, matter or thing concerning which, in accordance with the order by competent authority, he gave answer or produced evidence ” (Penal Law, § 2447, subd. 2).
The witness further contends that he has been denied his constitutional right against self incrimination because the immunity does not protect him from prosecution in any foreign jurisdiction, particularly in the Federal courts. Certainly in the absence of special circumstances, that view is not supported by the authorities. It has been expressly held that a witness may not refuse to testify because the immunity granted does not extend to possible prosecution in other jurisdictions (Brown v. Walker, 161 U. S. 591, 608; Feldman v. United States, 322 U. S. 487, 490-494; Dunham v. Ottinger, 243 N. Y. 423).
Some doubt is cast on the application of this rule, however, by the views expressed by a unanimous court in the Appellate Division, First Department in the recent case of Matter of Knapp v. Schweitzer (2 A D 2d 579, affd. 2 N Y 2d 913). After reaffirming the proposition that the validity of the immunity statute does not require a guarantee of freedom from Federal prosecution, the court states at page 585: “ But we cannot in fair compliance with our own Constitution remain insensible to the actual dangers of nonimmunized compulsory incrimination in the United States courts where we compel testimony in the ever-broadening areas and in subjects affected by the criminal laws of both governments. And while we can exercise no control over Federal practice, we can exercise a judicial supervision over State enforcement officers.
1 ‘ A State prosecuting officer investigating an area in which the criminal laws of both the Federal and State Governments operate together, and requiring immunized testimony in the development of his case, could himself give adequacy to State *69 constitutional safeguards by tendering co-operation with the appropriate United States attorney.
‘ ‘ If the co-operation were accepted by the Federal Government we have no doubt that within Feldman v. United States (322 U. S. 487, supra), Byars v. United States (273 U. S. 28, supra) and Burdeau v. McDowell (256 U. S. 465, supra) the courts of the United States would afford adequate safeguards to the witness. Such safeguards would strengthen the confidence with which a State might undertake to compel self-incriminating testimony where duality of criminal law might be operative, and it would tend to assure the adequacy of State constitutional guaranties binding alike on State prosecutors and State courts.” In the instant case it is evident that the District Attorney did not follow the procedure suggested in the Knapp case. Whether the absence of a tender of co-operation with Federal authorities would of itself constitute a lack 'of the adequacy of State constitutional guaranties there referred to, need not be determined by this court. Coupled with the circumstance that the illegally obtained document concerning which the petitioner was questioned is admissible not only in the State courts (People v. Defore, 242 N. Y. 13), but also in the Federal courts (see United States v. Benanti, 244 F. 2d — [C. A. 2d, May 6, 1957]), there may well be a real and substantial danger of Federal prosecution. Under such circumstances, it might not be unreasonable to conclude that the statutory immunity from State prosecution granted petitioner was an insufficient observance of his constitutional privilege against self-incrimination.
Consequently, if it were clear that a certificate of reasonable doubt is the proper remedy, this court would be constrained to grant such a certificate and admit the petitioner to bail pending appeal.
Section 527 of the Code of Criminal Procedure provides that an appeal from a judgment of conviction “ or other determination from which an appeal can be taken ” stays the execution of the judgment or determination upon filing a certificate of reasonable doubt. It would seem that the mandate of the Court of General Sessions committing the witness to the workhouse for criminal contempt of court in refusing to answer questions before the Grand Jury is such a determination within the meaning of section 527. Whether it is an appealable determination is beclouded by the provision in section 752 of the Judiciary Law providing that a mandate punishing a person summarily for a contempt committed in the *70 immediate view and presence of the court is reviewable by a proceeding under article 78 of the Civil Practice Act. As stated in the Thirteenth Annual Report of the N. Y. Judicial Council, 1947, at pages 236-237: The decisive factor in determining the method of reviewing the contempt proceedings is whether the contempt, having been committed in the immediate view and presence of the court, has been punished summarily or whether formal proof has been taken with respect to the acts or conduct alleged to constitute contempt. It has been held by the Court of Appeals that the proper method of reviewing a mandate issued after a summary adjudication of a criminal contempt committed during a civil action is by a certiorari proceeding. A prior case had held that the proper method of reviewing a criminal contempt committed during a criminal action and punished summarily was by a certiorari proceeding. The reason for reviewing summary contempts by a certiorari proceeding is that the court or judge has acted upon his own knowledge as to the facts constituting the contempt, and there can be no substitute for his statement of these facts in the mandate of commitment.
“ The recommended amendment codifies the present law in this respect. When formal proof has been taken, the proper method of reviewing a criminal contempt is by appeal.”
It would seem that in the instant case the acts held to be contemptuous took place in the Grand Jury room, not in the immediate view and presence of the court, and that thereafter formal proof of such acts was taken before the court. In that view of the proceedings, review of the determination is by appeal, and a certificate of reasonable doubt would lie. If it be held, however, that the witness’ restatement before the court of his refusal to answer the questions before the Grand Jury constituted a punishable act committed in the immediate view and presence of the court, then review is by way of a proceeding under article 78 of the Civil Practice Act.
No authoritative decision is found as to which is the proper method of review under the circumstances here presented. In view of the stipulation as to the alternative nature of this application, however, the same result is accomplished by either route. Treating the application as one to vacate the contempt mandate pursuant to article 78 of the Civil Practice Act, the result heretofore indicated is accomplished by granting the application only to the extent of staying further execution of the mandate under review in accordance with section 1299 of the Civil Practice Act. Pending determination or dismissal of *71 the appeal from the mandate heretofore taken directly to the Appellate Division, no other or further determination of this proceeding appears to be necessary or appropriate.
Settle order accordingly with provision for bond. Recommendations as to the amount of the bond may be submitted on such settlement.