In the Matter of PHILIP R. SHERIDAN et al., Respondents, *v.* STEPHEN P. KENNEDY, as Police Commissioner of the City of New York, Appellant, et al., Respondents.

First Department, February 23, 1961.

*Seymour B. Quel* of counsel (*Alfred Weinstein* with him on the brief; *Charles H. Tenney, Corporation Counsel*), for appellant.

*Murray A. Gordon* for Philip R. Sheridan and others, respondents.

EAGER, J. This proceeding, according to the petitioners, was brought to adjudge the respondent guilty of a criminal contempt. The order herein, without a determination that respondent's conduct impaired, impeded or prejudiced the rights and remedies of petitioners, adjudged that the "respondent's disobedience of the mandates of this Court has been wilful and deliberate, and that, therefore, the said respondent * * * is found and hereby held to be in contempt of this Court". Thus, it is clear that the order was intended to be and must be considered as an adjudication of criminal contempt.

By virtue of applicable provisions, there is a distinction between criminal contempts and proceedings to punish for a civil contempt. "As it respects disobedience to the orders of a court, the sole difference appears to be that a 'wilful' disobedience is a criminal contempt, while a mere disobedience by which the right of a party to an action is defeated or hindered is treated otherwise." (*People ex rel. Negus* v. *Dwyer,* 90 N. Y. 402, 406; also *Matter of North* v. *Foley,* 149 Misc. 572.) "Punishment for a criminal contempt is a drastic remedy for willful wrong" (*Matter of Spector* v. *Allen,* 281 N. Y. 251, 259); and "[a]s described in the statute, an element of willfulness, or of evil intention enters into and characterizes them [criminal contempts]." (*People ex rel. Munsell* v. *Court of Oyer and Terminer,* 101 N. Y. 245, 248–249.)

In view of the foregoing, the adjudication of the respondent here in criminal contempt may not stand unless it clearly appears that he did willfully act or that he did deliberately fail to act in a manner contrary to the plain directive of the court. The conduct and inaction of the respondent in respects claimed by petitioners to be criminally contemptuous may not be held to be such unless they clearly bespeak of an intent to defy the dignity and authority of the court. (9 N. Y. Jur., Contempt,

§ 3; *Matter of Rotwein [Goodman]*, 291 N. Y. 116, 122; *Pawolowski* v. *City of Schenectady*, 217 N. Y. 117, 118.) '' The command must be clear; disobedience must be willful. Guilt arises only where the authority of the court is flouted.'' (*Matter of Spector* v. *Allen, supra*, p. 260.)

To begin with, therefore, in this as in all charges of criminal contempt, we must look first to the order which the respondent is alleged to have willfully disobeyed. To determine whether or not there was a willful violation, the respondent's conduct must be examined in light of the terms of the order. The '' mandate alleged to be violated should be clearly expressed, and when applied to the act complained of it should appear, with reasonable certainty, that it had been violated.'' (*Ketchum* v. *Edwards*, 153 N. Y. 534, 539.) Where the terms of an order are vague and indefinite as to whether or not particular action by a party is required, then, of course, he may not be adjudged in criminal contempt for the willful failure to take such action. (*Ketchum* v. *Edwards, supra*; *Matter of Carlson* v. *Podeyn*, 12 A D 2d 810; *Howard S. Tierney, Inc.*, v. *James*, 269 App. Div. 348, 354; *Saal* v. *South Brooklyn Ry. Co.*, 122 App. Div. 364, 369; *New York City Tr. Auth.* v. *Loos*, 9 Misc 2d 492.) '' If the order alleged to be disobeyed is capable of a construction consistent with the innocence of the party there should be no punishment. (*Weeks* v. *Smith*, 3 Abb. Pr. 211.) '' (*Matter of North* v. *Foley*, 149 Misc. 572, 574, *supra*.)

The basic order, entered September 16, 1959, merely adjudged and decided that the respondent was '' enjoined, restrained and prohibited from engaging in the practice herein declared to be unlawful,'' which practice was merely therein stated to be '' to regularly designate without appointing Patrolmen, Sergeants and Lieutenants in the Police Department of the City of New York to perform the duties of the positions of Sergeant, Lieutenant and Captain, respectively, without appointment to the title, grade and salary of such higher position * * * declared and adjudged to be unlawful as in violation of the applicable civil service statutes, rules and regulations, and public policy ''.

The said order was general in terms absent a direction of specific action to be taken by the respondent Commissioner in designated areas or types of police work or with respect to particular officers. The respondent insists that he proceeded in good faith to carry out these general directions of the court as he understood them. Concededly, he did take certain action looking toward the eliminating of the unlawful practice of

assigning out-of-title work to police employees. In the meantime, the order was appealed to this court where it was affirmed (10 A D 2d 606), and to the Court of Appeals, where it was affirmed on April 29, 1960 (8 N Y 2d 794). Thereafter, by means of order to show cause, dated July 11, 1960, the petitioners applied to punish respondent for contempt. Special Term, upon considering said application on affidavits, concluded that the respondent's compliance had " been far from ' substantial ' ", but specifically held that it was not established that his conduct was " willful and deliberate " so as to warrant his being held in contempt. Thereupon, Special Term denied this first application upon condition, however, that within 30 days of service of the order, the respondent take necessary action in accordance with the opinion of the court to eliminate " the practice of having officers regularly perform the duties of higher positions without appointment to the title, grade and salary of such higher position." It is to be noted that the directions of the court were still general in terms, but it was expressly provided that, upon failure of compliance within 30 days, the petitioners might renew their application.

The petitioners, still claiming noncompliance by respondent, on the expiration of the 30-day period, promptly instituted the contempt proceeding now before this court. Upon affidavits and without a hearing, Special Term concluded that the respondent " has failed to substantially comply as directed " after being " afforded * * * ample opportunity to effect the necessary compliance by eliminating out-of-title assignments ", and further concluded " that respondent's disobedience to its mandate has been willful and deliberate." In our opinion, however, these conclusions are not supported.

Certainly, the court, in the rendition of its orders of September 15, 1959 and October 19, 1960, necessarily foresaw that there would be administrative and other unique and special problems confronting the respondent in making the many changes required to comply with the general terms of the order. As noted by Special Term in its October 11, 1960 opinion, " A police commissioner must of necessity be given considerable latitude in allocating his personnel in such a manner as will provide for the most efficient service * * * With a roster of almost 24,000 men performing duties requiring such a variety of skills, it is neither feasible nor humanly possible to expect a 100% literal compliance with established civil service procedures, and in permitting some deviation therefrom with respect to a relatively small percentage of the total personnel employed no violence is done to established civil service principles."

Under the circumstances, it was permissible, therefore, that the orders of Special Term were rendered in general terms rather than with detailed and specific directions. The respondent Commissioner was thus given reasonable opportunity to work out a compliance with the decision of the court, bearing in mind the problems involved. Detailed and specific directions could come later, if necessary.

In any event, the orders were not designed and do not purport to be a restraint against specific action by the respondent in connection with the duties of particular or named officers. The mandate of the court did not have the effect of enjoining specific instances of existing out-of-title work. The orders were designed to require the discontinuance of a clearly unlawful practice; and they are to be given such effect.

Examined in the light of the foregoing, we have concluded that a case of criminal contempt was not established. It certainly is not clear from the record that the conduct of the respondent was such as to amount to a willful defiance of the mandate of the court. True, it appears that he had failed to eliminate out-of-title work in the case of a number of employees, but the number now involved is not shown to be substantial. Of 426 alleged instances of out-of-title work in the original petition of May, 1959, resulting in the basic order of September 15, 1959, the number of officers specifically found by Special Term to be still working out-of-title is comparatively few. The court specifically mentions 131 out-of-title assignments existing as of October 11, 1960, and, accepting the respondent's statements concerning these men, the court then found that 82 thereof had been taken from out-of-title work. Of the 49 remaining named out-of-title employees, the respondent claims that since the rendition of the order appealed from, 24 of them have been retired or replaced in a proper manner; and this may be considered as bearing upon his alleged good faith.

Mere continuance in out-of-title work of a very limited number of the employees involved would not of itself establish a willful violation of the terms of the basic orders, directed, as they were, against the continuance of a " practice " of " regularly " designating employees to out-of-title work. Nor does the failure to date of the Commissioner to make changes in connection with the particular limited number of employees *ipso facto* indicate bad faith on his part. It is clear, however, that the respondent does have the burden of explaining any and all out-of-title exceptions still existing.

It is true that there is some support for the petitioners' claim that the respondent has not been acting in entire good faith.

But it does not clearly so appear, and, therefore, we have determined that he should. be given the benefit of the doubt in that connection. (Cf. *Mutual Milk & Cream Co.* v. *Tietjen,* 73 App. Div. 532, 537.) We must take into consideration the immense scope of the city police organization, its vast and varied work, the variety of job categories in which changes were required, and the responsibilities of the Police Commissioner to the people of the city. In view thereof, it may be that he was actually acting with reasonable dispatch to carry out the directive of the court. In any event, now, it should be made clear to him just what he must do and when he shall do it. He takes the position that if this is done he will comply. Certainly, then, he must comply or be subject to severe penalties of a contempt adjudication.

Because this is a criminal contempt proceeding, the petitioners have no vested interest or personal rights to be enforced herein. Being a proceeding maintained for the " punishment for the [alleged] wrong in the interest of public justice, and not in the interest of an individual litigant[s] " (*People ex rel. Munsell* v. *Court of Oyer and Terminer, supra,* p. 248), the determination herein of whether or not respondent shall be punished for contempt of this court, is mainly its concern. And it is merely our determination that, under all the circumstances, the adjudication on the record here of a criminal contempt is not required in the interests of justice or to vindicate the dignity of the court, and would not be in the interests of the public.

The order adjudging the respondent guilty of criminal contempt, entered January 4, 1961, should be reversed, without costs, and the motion to punish him for contempt denied, without costs and without prejudice. Because of the general terms of the basic orders, the matter is, however, remanded to Special Term to consider such further affidavits or other proofs, if any, as it may deem necessary or proper, and to render promptly such further order as it may deem proper and advisable to implement the orders of this court, with provision that upon noncompliance with any of the specific directions contained in such order, the application to punish the respondent for contempt may be renewed.

In connection with a direction for a prompt discontinuance of all supervisory and other out-of-title work of patrolmen, Special Term may consider whether or not, *among other things,* the following shall specifically be directed:

(a) The forthwith termination of a designation of any and all patrolmen as assistant or acting supervisors.

(b) A direction that within a minimal time specified any and all patrolmen assigned to the Police Academy as Physical Training Assistants shall not engage in the teaching or giving of instructions to trainees, with a possible consideration of some provision, however, for the conducting by patrolmen of physical training exercises in the presence of and under the direct supervision of an officer of proper rank.

(c) A direction that within a minimal time specified patrolmen assigned to Firearms' Ranges shall not, on such ranges, teach nor give instructions.

(d) A direction that, where a patrolman is employed in an office or in office or record work, his duties shall be limited to clerical and non-supervisory work under supervision of an officer of proper rank.

(e) Bearing in mind the special problems involved in the changing of the duties of Behrens as helicopter instructor, of Dale as field investigator with the Bomb Squad, and of Healy in his work in the Bureau of Public Morals, Special Term may consider whether or not additional minimal time shall be given to make changes with respect to duties of these men, with their continuance in the meantime in their present work with or without supervision by officer of proper rank.

In connection with a specific direction for discontinuance of all out-of-title work by sergeants and lieutenants, including such work of the 15 sergeants and 8 lieutenants specifically found by Special Term on October 11, 1960, to have been working out-of-title, Special Term shall determine whether or not additional time is reasonably required by the Commissioner and to be given for the making of the necessary changes in assignments with respect to sergeants and lieutenants assigned to the Detective Division.

In connection with all lieutenants now assigned to work in the matter of investigation of complaints of serious police misconduct (including the nine held by Special Term on October 11, 1960 as still performing out-of-title work), Special Term shall determine whether or not additional time is reasonably required by the Commissioner and to be given for making necessary changes, and whether or not a direction is proper permitting them in any event to perform certain tasks relating to any such investigation when working under the direction and supervision of captains.

BOTEIN, P. J., BREITEL, RABIN and BASTOW, JJ., concur.

Order, entered on January 4, 1961, adjudging the respondent guilty of criminal contempt, unanimously reversed, without costs,

and the motion to punish respondent for contempt is denied, without costs and without prejudice. Because of the general terms of the basic orders, the matter is, however, remanded to Special Term for further proceedings in accordance with the opinion of this court filed herein. Settle order on notice.