Chief Judge Desmond.
After relator was adjudged by County Court, Kings County, to be guilty of criminal contempt and sentenced to imprisonment for 30 days and to pay a fine of $250, he brought this habeas corpus proceeding returnable before Appellate Division, Second Department, which, after a hearing, dismissed the writ and remanded appellant to the City Prison. He appeals here by our leave.
Appellant argues three law( questions: did his failures to answer Grand Jury questions constitute contempt of court; if so, was this a direct contempt, that is, one committed “ in the immediate view and presence.of the court” so as to permit summary punishment without notice or “ reasonable time to make a defense ” (Judiciary Law, § 751); and, if not, did the proceedings here taken deprive relator of proper notice and adequate opportunity to present his defense? The facts which we will set out below are really undisputed. They justified — indeed, required — the holding that relator’s assertions before the Grand Jury of inability to remember were nothing less than deliberate refusals to answer. The facts show also that he was not adjudged or sentenced summarily but after a trial in open court. As we shall see, the positions taken by him and his counsel on his two appearances before County Court might well have been treated as contempts committed then and there (see People v. Hackley, 24 N. Y. 74; Matter of Costello v. Schurman, 6 Misc 2d 66; People v. Costello, 6 A D 2d 385, affd. 6 N Y 2d 761). However, the court and the prosecutor proceeded with caution and tried out in open court on testimony there given the question of whether relator had contumaciously refused to answer questions put to him in the Grand Jury room. As to notice of the contempt trial and opportunity to defend himself thereat, there was no refusal to accord relator all his rights in those respects.
The Grand Jury was investigating the attempted strangulation of Lawrence Gallo on August 20, 1961, at a Brooklyn restaurant called the “ Sahara Lounge ”, and the murder of a man named Magnasco in Brooklyn on October 4, 1961. The relator, Aurelius Cirillo, was pursuant to subpoena called as a witness before the Grand Jury on the morning of November 1, 1961, and after he had first refused to answer questions on the ground of incrimination he was accorded immunity and then *54 questioned as to his whereabouts and activities between noon and 7:00 p.m. on August 20, 1961, that is, the day of the alleged attack on Gallo. Relator testified to the Grand Jury in considerable detail, as shown by the minutes, as to some of his doings on August 20, 1961, but he insisted that he did not remember what he did on that day (Sunday) during the afternoon hours. He related that he had slept at home on the night of Saturday, August 19, that he did not go to church on Sunday morning, that he did not remember what time he got up that morning, that he was not at the Sahara Lounge at any time on that day, that he did not see a certain Scimone and a certain Pérsico on that day. After some other questions and answers he said that he first learned of the strangling of Larry Gallo by reading about it in a newspaper on Sunday night, August 20. He told exactly where he was when he read the newspaper and that just before this he had telephoned his wife who told him that a policeman had been at his home with relator’s brother looking for relator. Then relator was asked (during his first Grand Jury appearance) from what place he had telephoned and he said that he remembered where he bought the newspaper but did not remember from where he had telephoned and did not remember at all what he did that afternoon and that he did not remember any place that he went during the afternoon hours of August 20. He did remember that he had eaten breakfast at home, had eaten luncheon at home around noontime and had telephoned his wife about 6 o’clock but he did not remember where he had been or what he had done between one and 6 o’clock on that August 20 date. There are several pages of these questions and answers and it could be reasonably concluded therefrom that relator was in fact although not in form refusing to testify as to what he did and where he went on that afternoon.
After that first Grand Jury episode and on the same morning relator, accompanied and represented by his attorney, was taken before the County Judge and an application made by the District Attorney to punish him for contempt. The previous Grand Jury proceedings were described to the County Judge, there was some argument between counsel, then the Judge announced that since relator had been given immunity he would have to answer the questions as to his August 20 activities, or go to jail. Relator’s *55 counsel told the Judge that if there was to be a contempt proceeding it should be done on papers so that relator could answer and so there would be a record. During this colloquy in County Court it appeared also that the District Attorney claimed that relator and members of his family had gone into hiding after the Gallo crime. The County Judge ordered that the Grand Jury minutes be given to relator’s counsel and that relator have one more chance to go before the Grand Jury and answer the questions. Counsel at that time told the court that the questions would be answered but the County Court warned that answers of “I don’t remember” would be regarded as falsehoods. The discussion shows that all concerned knew exactly what the situation was and what relator’s problem was.
Delator was then taken back before the Grand Jury and again asked what he did and where he was between noon and 7 o ’clock on August 20, 1961. He said that he did not remember where he was during that period. He admitted that he had been away from his home for more than two months from August 20 until he had surrendered to the police a few days before the Grand Jury appearance and said that he had been in Long Island and “ up-State ” and that he knew the police were looking for him during that time. Lie said he had not surrendered to the police because he was afraid of “ The Gallos ”. He said that he had nothing to do with what happened to Larry Gallo but that a newspaper had printed a story to the effect that he (relator) had driven a car involved in the Gallo assault.
After the second Grand Jury proceedings described in the above paragraph, Cirillo was taken back (early afternoon of the same day) before the County Judge. The District Attorney, who had on the earlier appearance that morning in County Court made an informal motion to punish relator for contempt, renewed the motion and notified the County Judge that Cirillo had again testified to a lack of memory. The prosecutor asked and was given the court’s permission to read into the record the questions and answers of relator before the Grand Jury. Delator’s attorney objected to the contempt proceedings being conducted in this way since, so he said, he needed time to read and study the Grand Jury minutes. Actually, there was little need for study or deliberation, in face of what was so plain a case and particularly because it was now doubly clear that *56 relator had again failed to answer, despite the court’s direction given a few hours earlier. The Grand Jury stenographer then read, in the presence of the County Judge and the District Attorney and relator and his counsel, the testimony summarized above. The District Attorney renewed his contempt application under subdivision 5 of section 750 of the Judiciary Law. Relator’s attorney said that he needed the minutes of the County Court proceedings then under way so that he could “brief” the matter before the County Court should hold relator in contempt, and argued orally that the answers were not contemptuous. After further discussion the Judge found relator guilty of willful, intentional and contemptuous refusals to answer questions. Relator’s counsel again requested further time to study the minutes and prepare a brief, etc. The court refused the request and imposed sentence.
Perhaps the real question is as to whether under all the circumstances the County Court gave relator a reasonable opportunity to prepare his defense and to be heard in defense. The answer must be based on this particular record. Although counsel continually asserted his need for additional time he had, under the circumstances, a fair opportunity to put forward any proof or arguments available to his client. “ What constitutes sufficient notice and reasonable time to make a defense depends upon the particular circumstances of each case ” (Matter of Spector v. Allen, 281 N. Y. 251, 256).
We have no doubt of the validity of the finding below that these “ don’t remember” answers were contemptuous (People ex rel. Valenti v. McCloskey, 6 NY 2d 390, 398, 399).
The order should be affirmed.