Jasen, J.
In July, 1970, appellants, who are New York City policemen, were subpoenaed to testify before the Commissioner of Investigation of the City of New York. Each appellant was advised of his right to counsel and his privilege against self incrimination. They were also advised that if they refused to *296 answer any questions relating to the performance of their official duties, they would he subject to dismissal from the police force, and that if they did testify, neither their answers, nor any information or evidence gained by reason of those answers, could be used against them in a criminal proceeding.
Appellants were then questioned about entries made on five sheets of police memo book paper. Bach of them identified certain entries on the sheets as being in his handwriting, but when asked under what circumstances or for what purposes the entries had been made, each testified that he could not remember. It appears from the sheets themselves that the particular form on which the entries were written was not used by the police department until 1968.
Pursuant to CPLR 2308 (subd. [b]), the commissioner moved at Special Term for an order committing appellants to jail.[1] The court denied this motion and quashed the subpoenas upon the ground that the commissioner could not compel appellants to surrender their constitutional privilege against self incrimination, either by threat of job forfeiture or by threat of the court’s contempt power, since the commissioner had no authority to confer any type of immunity upon appellants.
The Appellate Division unanimously reversed and granted the petition for commitment of appellants. That court concluded that no question of the violation of appellants’ privileges against self incrimination was involved in the case since “ [appellants’] answers were palpably evasive and transparently sham, such as to amount to a refusal to answer without claiming any privilege.”
Two questions are presented upon this appeal — first, were the responses given by appellants so evasive as to amount to a refusal to answer a legal and pertinent question; and, second, if the responses were equivalent to a .refusal to answer, can those responses be the basis for a contempt proceeding against appellants.
*297 We turn first to the question of whether appellants’ answers were equivalent to a refusal to testify. The fact that the witness gives some response to a legal and pertinent question is not dispositive of the issue of whether he has refused to answer. (People ex rel. Valenti v. McCloskey, 6 N Y 2d 390, 398, app. dsmd. 361 U. S. 534.) The general rule as to what responses are in effect refusals to answer was well stated by Judge Learned Hand in United States v. Appel (211 F. 495): “ The rule, I think, ought to be this: If the witness’ conduct shows beyond any doubt whatever that he is refusing to tell what he knows, he is in contempt of court * * * Nevertheless, this power must not be used to punish perjury, and the only proper test is whether on its mere face, and without inquiry collaterally, the testimony is not a bona fide effort to answer the questions at all.” (at pp. 495-496).
From the evidence before us, we conclude that the entries on the police memo sheets were made pursuant to a common scheme which contemplated passing the sheets among patrolmen of the precinct sector for their additions and corrections. We find it to be incredible as a matter of law, as well as obstructive to the purposes of the investigation, that the appellants could not recall the nature of this common scheme. (See People ex rel. Valenti v. McCloskey, 6 N Y 2d 390, supra.) Accordingly, we hold that the appellants did not make bona fide efforts to answer the questions put to them, and, consequently, that they refused to answer legal and pertinent questions without reasonable cause.
Considering next the question of whether appellants’ evasive responses can be used in a subsequent contempt proceeding pursuant to CPLR 2308 (subd. [b]), appellants argue that the rationale of Garrity v. New Jersey (385 U. S. 493) applies to the situation before us. In effect, they say, that if testimony coerced from a public employee by threat of job forfeiture cannot be the basis of a criminal conviction, then such testimony cannot be used to jail a public employee for civil contempt under CPLR 2308 (subd. [b]).
In Garrity, police officers were examined, pursuant to a court order, by the Attorney General of New Jersey concerning irregularities in the handling of certain traffic violations. Before being interrogated, each officer was advised of his privilege *298 against self incrimination and of the fact that a refusal to answer would subject him to removal from office. No immunity was granted, since no immunity statute was applicable to these circumstances. The officers answered the questions and were subsequently charged with and found guilty of criminal conduct involving the fixing of traffic violations upon the basis of the answers they gave to the Attorney General. The Supreme Court concluded that the officers ’ answers had been coerced, in violation of their privilege against self incrimination, because of the threat of job forfeiture for refusal to answer. The remedy which the court applied to these coerced statements was the same which has been applied to involuntary statements in general—namely, an exclusionary rule which “ prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office ” (Garrity v. New Jersey, 385 U. S. 493, supra, at p. 500).
In our view, the holding of Garrity does not preclude the use of appellants’ testimony in a contempt proceeding for refusal to answer. In Garrity, the court considered only the question of whether the testimony of public employees under threat of job forfeiture for refusal to testify could be used in a criminal prosecution for crimes committed prior to the time they testified. It is an entirely separate question as to whether the testimony of public employees under the threat of job forfeiture may be used in a civil contempt proceeding for acts committed at the time of testifying, such as perjury or the giving of evasive answers.
The general rule in our State is that a grant of statutory immunity does not bar the use of testimony thus compelled in a subsequent contempt proceeding. (E.g., CPL 50.10, subd. 1; People v. Chestnut, 26 N Y 2d 481, 492; Matter of Gold v. Menna, 25 N Y 2d 475, 481, 482.) Nor did the exclusionary rule, which arose as a result of the unconstitutional coercion inherent in subpoenaing a prospective defendant to appear before the grand jury, bar the use of compelled testimony in a subsequent contempt proceeding, or prosecution for perjury. (People v. Ianniello, 21 N Y 2d 418, mot. for rearg. den. 21 N Y 2d 1040, cert. den. 393 U. S. 827; People v. Tomasello, 21 N Y 2d 143.)[2]
*299 The reason for these rules was well stated by Wigmore in his treatise on Evidence (McNaughton rev., 1961, vol. VIII, § 2282, p. 512): “ If argument were needed, it would be sufficient merely to appeal to the terms of the privilege, which forbids that one be compelled to give evidence against himself—for the perjured utterance [or the utterance which amounts to a refusal to answer] is not ‘ evidence ’ or ‘ testimony ’ to a crime but is the very act of crime itself ”.
In People v. Tomasello (21 N Y 2d 143, supra), we faced the question of whether the exclusionary rule prevented a prospective defendant from being convicted of perjury upon the basis of what he said before the grand jury. We concluded that the exclusionary rule extended only to prosecutions for past- crimes and not to perjury, which is committed in the very process of testifying. The related question of whether the exclusionary rule prevented the. prospective defendant from being held in contempt for giving evasive answers was considered by us in People v. Ianniello (21 N Y 2d 418, supra). We held there, utilizing the rationale of Tomasello, that the exclusionary rule was not a bar to a contempt proceeding.[3] **
Since the exclusionary rules enunciated in People v. Steuding (6 N Y 2d 214, mot. for rearg. den. sub nom. People v. Ryan, 7 N Y 2d 805) and in Garrity (385 U. S. 493, supra), were designed to alleviate the adverse effects of unconstitutional coercion, we adopt the reasoning of the Tomasello and Ianniello cases, and we hold that the exclusionary rule, which is applied to the testimony of public employees who are under threat of job forfeiture for refusal to testify, does not bar the use of such compelled testimony in a contempt proceeding pursuant to CPLR 2308 (subd. [b]).
Accordingly, the order of the Appellate Division should be affirmed.
*300 Chief Judge Fuld and Judges Burke, Breitel, Gabrielli, Jones and Wachtler concur.
Order affirmed, without costs.

. CPLR 2308 (subd. [b]) provides in pertinent part: “If a person so subpoenaed attends or is brought before such person or body, but refuses without reasonable cause to be examined, or to answer a legal and pertinent question * ** * the court, upon proof by affidavit, may issue a warrant directed to the sheriff of the county where the person is, committing him to jail, there to remain until he submits to do the act which he was so required to do or is discharged according to law.”

. Since the grand jury immunity statute then in existence (former Penal Law, § 2447 [McKinney’s Cons. Laws of N. Y., Book 39, Penal Law, 1966-67 Cum. Pocket Part]) was not self-effectuating, as it is now (CPL 190.40), we *299 held that a prospective defendant’s right not to be compelled to testify against himself was violated by the coercion inherent in subpoenaing the prospective defendant to testify before the grand jury, and, thus, we applied the exclusionary rule to the prosepeetive defendant’s coerced testimony. (People v. Steuding, 6 N Y 2d 214, 216-217, mot. for rearg. den. sub nom. People v. Ryan, 7 N Y 2d 805.)

. People v. DeFeo (308 N. Y. 595), holding to the contrary, was explained as no longer applicable in People v. Tomasello (supra, at p. 148).