Arthur S. Hirsch, J.
Defendant was tried by the court nonjury for the crime of criminal contempt in the first degree in that while testifying before a Grand Jury, he "did refuse to answer legal and proper interrogatories”. The indictment further alleges that defendant’s answers were "evasive, equivocal and specious, in that such answers were given to mislead, confuse and deceive the Grand Jury in its investigations, said answers being tantamount to no answer at all, being employed as a subterfuge on the part of the witness to avoid answering the questions propounded to him.”
The facts reveal that defendant testified substantially as follows: Defendant was at a Waldbaum’s parking lot one day when he was approached by a man who came over and told him his car sounded bad. The man offered to repair the car at a low cost and defendant then and there turned the car over to the man with the keys and the registration. Defendant never ascertained the man’s name or where he could be reached, but merely gave the man his phone number. The record revealed the following specific questions and answers:
"Q. You gave him the keys too?
"A. Yes.
"Q. Gave the keys at the time to a complete stranger in the parking lot of Waldbaum’s who you had a conversation that lasted approximately 30 seconds to 1 minute, is that right?
"A. Yes.
"Q. Did you find out where he worked?
"A. No.
"Q. Did you get a telephone number?
"A. I gave him mine.
"Q. Gave you a phone number?
"A. No.
"Q. Did you get his name?
"A. No, his first name.
*172 "Q. Did you go to the Waldbaum’s to go shopping?
"A. No, he drove away with the car and I walked back home.”
In order to be adjudged guilty of criminal contempt, it is not necessary that a witness absolutely refuse to answer questions or answer questions with statements indicating complete lack of knowledge or loss of memory. It is sufficient that the answers given to questions are so "evasive, equivocal” or "specious” so as to indicate a calculated intent on the part of the witness to avoid answering questions and to impede the course of justice. There are no problems at the two ends of the scale, i.e. where a defendant answers forthrightly, completely and with recollection there can be no conviction for criminal contempt. Where a witness refuses to answer at all or completely or almost completely fails in his memory, then conviction for criminal contempt should follow. In the instant case, we are more in the middle area where a witness has answered questions, but his answers (1) can be proven to be false by extrinsic evidence (People v Renaghan, 33 NY2d 991) or (2) are so improbable, inconsistent, evasive, contradictory or obviously untruthful as to constitute contempt (Matter of Finkel v McCook, 247 App Div 57).
Dealing with the first category of answers which can be proven to be false, defendant’s reliance on the Renaghan case as applied to the instant matter is inappropriate. It is true that Renaghan holds that if a defendant’s answers might be proven false, such a defendant would be subject to a perjury charge rather than criminal contempt. As stated by the Appellate Division in Renaghan (40 AD2d 150, 152): "Unless the record, without resort to external proof of falsity [emphasis supplied], indisputably shows the response is false and the clearly false testimony was given to obstruct the investigation of the Grand Jury, there is no basis for criminal contempt.”
This is not the situation we are faced with, however, for defendant Tilotta’s testimony did not appear truthful at the time it was given before the Grand Jury. Defendant’s testimony falls into the second category warranting a conviction for criminal contempt because of the incredible nature of the testimony. The nature of the testimony was Such that the record itself shows it to be false on its face without the necessity of resorting to extrinsic proof. Defendant’s testimony clearly fits into the test for criminal contempt enunciated by Judge Untermyer in the Finkel case (supra, p 67), where he *173 states: "To bring such a case within the statute [for criminal contempt], however, the answer must be so absurd that mere inspection makes it necessary to conclude that the witness did not intend his answer to be seriously considered.”
The Finkel case further holds (p 63):
"There is a distinction between the untruthful statement which does not clearly appear to be such from the face of the record but is uncovered only with the aid of extrinsic evidence and testimony which is so plainly inconsistent, so manifestly contradictory and so conspicuously unbelievable [emphasis supplied] as to make it apparent from the face of the record itself that the witness has deliberately concealed the truth and has given answers which are replies in form only and which, in substance, are as useless as a complete refusal to answer.”
In the case of People ex rel. Valenti v McCloskey (6 NY2d 390) the Court of Appeals dealt with the distinction between clear, direct and unequivocal testimony which might be perjurious and testimony so patently false on its face so as to be considered as no testimony at all. The Valenti case involved two writs of habeas corpus brought by individuals who had been committed to civil jail as a result of prior testimony before the State Commission of Investigation. The relators testified a second time before the commission but the commission refused to assent to their release stating that the relators "gave 'some sort of answer to each question’ but * * * that the answers given were 'in varying degrees, false, evasive and obstructive of its investigation; indeed, in many instances the answers are inherently incredible’.” The Court of Appeals ruled that both relators should be released. The opinion stated (pp 403-404): "the only meaningful standard by which it may be determined whether each of the relators 'submitted] to do the act which he was required to do’ * * * is whether he 'directly responded’ to the enumerated 26 questions 'with unequivocal answers * * * clear enough so that if they are shown to be false [he] would clearly be guilty of perjury.’ * * * When the answers given by Frank and Costenze are carefully measured against this standard, it becomes apparent that, though they may have been false, they were definite and unequivocal”. Thus, the court found that the answers in question were not, as the commission contended, so incredible as to be unbelievable and perjurious, without extrinsic proof. It is significant that in arriving at this decision the Court of *174 Appeals acknowledged (p 398): "With respect to both civil and criminal contempt, however, the courts of this State have recognized that under certain circumstances a response to a question may be so false and evasive as to be equivalent to no answer at all.”
In arriving at the conclusion that this defendant’s testimony was both incredible and absurd on its face, the court has taken into account the fact that this defendant appears to be a man of at least average intelligence. As a matter of fact, the testimony reveals that he is employed as an animator, a position which may often require independent judgment and above-average skills. In view of the story given by the defendant and his evident capabilities, this court can come to no other conclusion than that his story was a fabrication and rendered with intent to impede the Grand Jury’s investigation. This course of conduct constitutes the offense of criminal contempt.
Accordingly, defendant is adjudged guilty of the crime of criminal contempt in the first degree.