Joel J. Tyler, J.
Defendant belatedly moves on the eve of trial to dismiss the indictment, charging 18 counts of criminal contempt in the first degree (Penal Law, § 215.51). There appears no legal impediment to the consideration of this motion now (CPL 210.20, subd 2). I am satisfied with the explanation given for the delay in moving sooner. Further, a consideration of this motion now may foreclose an unnecessary and perhaps lengthy trial and the concomitant expense. In any event, a motion to dismiss after the People have put in their proof, would involve the same considerations of fact and law, with which the court must now deal.
The thrust of the defendant’s position is that his answers before the Grand Jury given to certain questions of the Assistant District Attorney, were direct and unequivocal and not evasive as to constitute a contempt of the Grand Jury process. Accordingly, he urges that the indictment, which charges that those answers constituted a contumacious and unlawful refusal to answer proper and legal interrogatories, must be dismissed as a matter of law. The People maintain that the answers given were so evasive and equivocal as to constitute, in effect, a refusal to answer.
I am necessarily constrained to agree with defendant and dismiss the indictment and each of its counts.
Without resort to any extrinsic supporting evidence, as judicial authority mandates, I find, as a matter of law, that the defendant’s answers, on their face and in relation to others given, cannot be said to be either inconsistent, evasive, contradictory, absurd, deceptive or obviously untruthful as to render them a deliberate calculation to obstruct the Grand Jury investigation.
The facts are clear. By a duly issued order, a designated phone at the Rosedale Bar in the Bronx, was tapped in connection with an investigation of an alleged loan shark operation, involving certain persons connected with those premises. The defendant was employed as a part-time bartender at that bar. The indictment arose out of two recorded *130 telephonic conversations had by the defendant on February 25, 1975 with one, "Tony”, and on March 1, 1975 with one, Joe Pizza. Both conversations were heard by the court during an audibility hearing; they were quite short, each about two minutes duration.
On May 28, 1975, about three months after those telephonic conversations,[1] the defendant appeared before the Grand Jury, was given effective immunity, and questioned relative to such conversations.
Defendant was asked a total of 116 questions, 18 of which the People claim were evasive to the extent that they constitute a refusal to answer. With respect to the remaining 98 answers, concerning which the People do not complain, I find that they too were answered sufficiently in direct, unequivocal and forthright form. It should be noted that a number of times the defendant unequivocally answered that "payments” were left with him to be delivered to his employer and others and he explained the nature of those payments; and when asked if certain named individuals had left such payments, he answered unequivocally in the affirmative.
Where the People proceed, as here, upon the theory that the contempt arose out of contumacious evasion, amounting to a refusal to answer, then there may be no examination of the tapes or other extrinsic evidence, but the proof must be found to lie within the confines of the alleged evasive testimony itself.
Judge Learned Hand aptly noted that, in evasive contempt cases "the only proper test is whether on its mere face, and without inquiry collaterally, the testimony is not a bona fide effort to answer the question at all.” (United States v Appel, 211 F 495, 496; emphasis supplied.) Unless the record alone (i.e., minutes of testimony before the Grand Jury) and "without resort to external evidence” demonstrates the evasions and equivocations, "there is no basis of criminal contempt.” (People v Renaghan, 40 AD2d 150, 152; affd 33 NY2d 991.) To bring a case within the statute "mere inspection” of the witness’ testimony must demonstrate that "the witness did not intend his answer to be seriously considered.” (Matter of *131 Finkel v McCook, 247 App Div 57, 67; affd 271 NY 636; People v Tilotta, 84 Misc 2d 170.)
People v Saperstein (2 NY2d 210) is not contrary. There the defendant denied that he had taken any part in the telephonic conversations because he could not recall them or the voices. Accordingly, the trial court permitted the tapes to be played (p 217), because "of the form which defendant’s contempt here took it was proper to show the trial jury that defendant must have recognized the voices because he had had such numerous and important transactions with those persons.” However, the court recognized that the unusual circumstances there justified the introduction of extrinsic evidence, the tapes, but restricted its ruling to that case by noting that "on this particular record” the tapes should be played to the jury, "without suggesting that the same practice would be valid in another case” (p 217). Such unusual circumstances are not here present.
As we examine the questions and answers contained in Counts 2, 3, 4, 11, 14, 17 and 18, we consider also the full testimony before the Grand Jury, as we must. Each of those questions commenced or ended with the words "Do you remember” or "Do you recall”, to which the defendant answered "No” or "No, I don’t” or "I don’t remember”. These questions sought to ascertain whether he recalled the two conversations in question, the particulars thereof and their meaning. The defendant essentially denied memory of such conversations or particulars in connection therewith. The defendant maintains that considering all of the testimony, those answers were not equivocations but constituted direct replies to the questions, in the light of their form. The People insist that "don’t remember” or "I don’t recall” answers, by their very nature, are evasive and not sufficiently unequivocal, citing Matter of Epstein (43 Misc 2d 987) and People v Martin (47 AD2d 883).
Reliance on those cases here is unavailing to the prosecution. Epstein is support only for the proposition, not relevant here, that one standing accused of criminal contempt, not committed in the court’s immediate view and presence, is entitled, as a matter of due process, to receive notice and specifications of the charges embracing the contempt and a hearing to test them. What the court said there, merely by way of dicta, was to the effect that if the required hearing revealed that defendant’s responses were so evasive, equivocal and false as to be equivalent to no answer at all, such *132 defendant could be punished for contempt. To illustrate its meaning the court there stated that "such a case is where the witness persists in giving 'don’t remember’ answers to questions which he is obviously in a position to answer unequivocally”, citing People ex rel. Cirillo v Warden of City Prison (11 NY2d 51, 56). Of course, nowhere did the court indicate that "I don’t remember” answers, in and of themselves, are contemptuous.
In Cirillo (supra), we find a situation, unlike here where the defendant appeared to have a good memory as to almost all of his activity on the morning of a specified date, 70 days prior to his Grand Jury testimony, but had a lapse of memory with "I don’t remember” responses as to where he was and what he did on the afternoon of that day, a time critical to the investigation. Similarly, in Martin (supra, p 884), the reluctant defendant denied any meetings with Hugh Mulligan in 1969 and then at one point retreated to "I don’t recall seeing him any time during the year 1969”, and "when asked about specific meetings on dates cértain” again he failed to deny them but resorted to "I don’t recall” or "I don’t recall it at all”. Finally, when confronted with the transcripts of telephone calls and particularized facts, was forced to admit several meetings with Mulligan in 1969, but resorted to "I don’t remember” when questioned about those meetings.[2]
Equivocation and evasion are poignantly apparent in Cirillo (supra) and Martin (supra).
Cirillo would remember, in detail, long past innocuous activity, clearly, and most suspiciously hedged markedly in a failed memory as to matters occurring on the same day but vitally relevant to the inquiry, while Mr. Martin modulated between denial, admission and a failed memory, all with respect to the same circumstances.
Under the peculiar circumstances in Cirillo and Martin, the "I don’t remember” answers, viewed in the light of all their Grand Jury testimony, could be said to be wilful and intentional evasions, amounting to a contemptuous refusal to answer. We have no such patent evasiveness here. Nor do we find a like or approximate measure of improbability and *133 obvious untruthfulness as manifest in Matter of Ruskin v Detkin (32 NY2d 293) and People v Tilotta (84 Misc 2d 170, supra); or "persistent equivocation * * * despite earlier formal, unqualified denials” which the dissenting Judges found in People v Renaghan (33 NY2d 991, 993, supra); or a transaction of such magnitude and significance and of such recent date, that a failure to remember it is not understandable and must be deemed deliberate to evade the questions, as in People v De Feo (284 App Div 622, 624-625, revd on other grounds, 308 NY 595), and United States v Appel (211 F 495, 496, supra); or so "absurd”, "deceptive”, "obstructive” or "flippant” as to be "answers in form only * * * clearly tantamount to a refusal to answer”, as in Matter of Finkel v McCook (247 App Div 57, 62, 64, 65, affd 271 NY 636, supra).
When a question is initiated or concluded with "do you remember” or "do you recall”, concerning a matter not in the recent past and not of such momentous and unusual significance where ready recall would be expected and the failure to recall is understandable, then the response of "I don’t recall” or "I don’t remember” and the like, should not be deemed alone to be a palpable evasion and a transparent sham, suggesting a contumacious refusal to answer, for the answer is a direct and unequivocal one to a question artless and maladroit in form.
In the usual case, an answer of "I don’t remember” to a possibly critical "do you recall” question, can, assume the cloth of evasiveness, if it is preceded by a series of carefully formulated questions whose answers, in toto, demonstrate a studied, subtle or bold intent to hinder the investigation. The "I don’t remember” answers are, rarely determinative, in and of themselves, of a witness’ intent, but must be viewed in the context of the preceding and possibly subsequent questioning to determine if they constitute an illegal transgression or innocent and possibly truthful responses.
Here, I fail to find in the main, that measure of perceptibly careful and developed inquiry which could distill the "I don’t remember” answers to a probable conclusion that distinct attempts were made by defendant at evasion or falsehood to avoid telling what he knows.[3]
*134 Accordingly, the seven counts aforementioned bespeak of no legal consequence here, merely for their possible improbability or falsity. (Matter of Finkel v McCook, supra, p 68; People v Renaghan, 40 AD2d 150, 152, supra). "It bears constant repetition that the truth or falsity of the answers is immaterial here” (People ex rel. Valenti v McCloskey, 6 NY2d 390, 404), although they may subject the witness to a perjury indictment (Valenti, supra, pp 403-404; Renaghan, 33 NY2d 991-991, supra; People v Tilotta, 84 Misc 2d 170, 172 supra). Criminal contempt may not be the vehicle to punish perjury. (People ex rel. Valenti v McCloskey, supra, pp 403-404; People v Renaghan, 40 AD2d 150, 152, supra; United States v Appel, supra, p 496).
Count 2 fails for another reason. It is a multiple question not susceptible to a single answer, and, therefore, must fail as a "proper interrogatory.” Further, the answer was clearly unresponsive and an examination of the Grand Jury testimony indicates no effective follow-up inquiry which could have elicited a responsive and substantially binding answer.
The conversation with "Tony” on February 25, 1975, involved Counts 8 through 18. Defendant testified that Tony, "he calls me up all the time” and "I speak to Tony all the time on the phone, every day”. That conversation, had three months before his Grand Jury testimony, does not appear of particular significance "involving unusual circumstances” (People v Martin, 47 AD2d 883, 884, supra) concerning events "which must have impressed [itself] upon his memory at the time to a greater extent "(United States v Appel, supra, p 496). A failure to recall that conversation in whole or in part, had with an individual with whom he speaks on the phone regularly, and possibly daily, is understandable and not readily gainsaid.
Further, although the tape of the March 1 conversation with Joe Pizza was replayed for the defendant in an attempt to prod his memory, the tape of the conversation with Tony, unfortunately, was not replayed nor was a written transcript then given to the defendant to possibly refresh his failed memory. Under such circumstances, it becomes almost pointless to inquire with respect to the content of such alleged *135 conversation, particularly, of course, where the defendant denies memory of engaging in the conversation. Such persistent denial here does not point with certainty or even probability to the requisite intent to evade.
Considering all of the answers to all of the questions in all of the counts, and in the light of all of the testimony before the Grand Jury, it cannot be said that probable grounds were present to believe that the alleged errant replies were specious and indicative of a "distinctive intent to both mislead and obstruct the grand jury in the performance of its function” (People v McGrath, 86 Misc 2d 249, 257) or "the nature of the testimony was such that the record itself shows it to be false on its face without the necessity of extrinsic proof’ (People v Tilotta, 84 Misc 2d 170, 172, supra), or the answers were "so frivolous on its face that it does not constitute an answer at all,” or "so absurd that mere inspection makes it necessary to conclude that the witness did not intend his answer to be, seriously considered” (Matter of Finkel v McCook, 247 App Div 57, 67, supra), or consisted of such "persistent equivocations” as to constitute "a pattern of sophisticated evasion” (People v Renaghan, 33 NY2d 991, 993, supra), or that the defendant’s conduct shows "beyond any doubt whatever” that he refuses to tell what he knows or that his responses are "obviously and apparently a mere effort to block the examination” (United States v Appel, 211 F 495-496, supra), or so "evasive,” "incredible” or "obstructive,” that the replies "amount to a refusal to answer a legal and pertinent question” (Matter of Ruskin v Detkin, 32 NY2d 293, 296, 297, supra); and the testimony "was neither incredible as a matter of law nor patently false” (People v Renaghan, 33 NY2d 991, 992, supra).
Accordingly, the indictment is dismissed.

. At the Grand Jury examination, the questioning prosecutor admonished the defendant for failing to recall conversations "seven or eight weeks ago”. Apparently, the prosecutor may have suffered a failure of memory as well. In fact, there was a three-month lapse.

. Similarly, in People v Saperstein (2 NY2d 210, 217), defendant’s Grand Jury testimony revealed many details about his business and he "admitted that he had had many transactions with the people who apparently took part with him in these wiretapped talks, but that his memory failed him only at the point where it was embarrassing for him to remember certain conversations.”

. Count 10 is particularly in point. The question previous to that cited in Count 10, inquires whether defendant ever had a certain discussion with a named individual, to which defendant responds, "I might have, I don’t remember”, which is not an acknowledgment and yet not a denial. The very next question (Count 10) is hypotheti *134 cal in form: "If you might have discussed it with him what did you mean.” That is not a "proper interrogatory” in the context of the previous question, and invited the type of innocuous response the defendant gave, in part, "I don’t recall the conversation really.”