■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v TOM DIDIO, Respondent.—Order reversed, motion denied and indictment reinstated. Memorandum: The People appeal from an order dismissing an indictment which charged the defendant with criminal contempt in the first degree (Penal Law, § 215.51). The defendant was subpoenaed to appear as a witness before a Grand Jury which was investigating illegal gambling activities. He was represented by counsel who was present outside the Grand Jury room during his testimony. The record shows that he was advised that he could consult with his attorney at any time during the interrogation; that he had been granted full immunity from prosecution; that he could be prosecuted for perjury for giving false answers and that he could be prosecuted for contempt for refusing to answer proper questions. The trial court found that the defendant was properly advised that the Grand Jury had conferred immunity upon him; that the questions asked of him were proper, lawful and pertinent to the inquiry; and that "the defendant's answers could be found to be equivocal and evasive and, therefore, in effect a refusal to answer." Expressly under constraint of the Second Department's decision in *People v Cutrone* (50 AD2d 838, app dsmd *sua sponte* because of defendant's death 40 NY2d 988), however, the court dismissed the indictment upon its determination that the defendant was not warned during his testimony "that his continued recalcitrance in answering proper questions would expose him to charges of criminal contempt." While we concur in all of the trial court's findings, we reject the rule in *Cutrone* requiring that such a warning be given to a Grand Jury witness as a precondition to his indictment under section 215.51 of the Penal Law. In our view, none of the cases cited in *Cutrone* is authority for the conclusion there reached. Nor is there any other judicial precedent or statutory mandate establishing such warning as a condition precedent to the indictment returned here. In *People v Miranda* (31 AD2d 657), the Second Department, relying upon *People v Riela* (7 NY2d 571), held that a criminal contempt indictment under subdivision 6 of section 600 of the former Penal Law could not be dismissed on the ground that an immunized defendant had not been directed by a court to answer questions before a Grand Jury (see, also, *People v Alongi,* 31 AD2d 656; *People v Carillo,* 31 AD2d 657; *People v Eboli,* 31 AD2d 657). In

*People v Breindel* (73 Misc 2d 734, affd 45 AD2d 691, affd 35 NY2d 928), the trial court pointedly rejected the defendant's claim that he should not be convicted of criminal contempt because he was not formally directed to answer by the foreman of the Grand Jury. True, both *Miranda* and *Breindel* dealt with witnesses who flatly refused to answer questions put to them in the Grand Jury, while here we are concerned with equivocal and evasive answers. The long-established rule, however, is that contempt is committed when a defendant's response is "so false and evasive as to be equivalent to no answer at all" *(People ex rel. Valenti v McCloskey,* 6 NY2d 390, 398). Thus, to differentiate the facts here from those which gave rise to the rule of *Miranda* and *Breindel* concerns a distinction without legal significance. Although this precise issue was not before the Court of Appeals in *People v Ianniello* (21 NY2d 418), there the court sustained a criminal contempt indictment (former Penal Law, § 600, subd 6) premised solely upon evasive answers and it does not appear that the kind of preindictment warning required by *Cutrone* was given to the defendant. We conclude that the contempt is total when a sworn Grand Jury witness "contumaciously and unlawfully * * * refuses to answer any legal and proper interrogatory" (Penal Law, § 215.51). Here a jury could properly find that the defendant's answers were so equivocal and evasive as to constitute a contumacious refusal to answer (see *People v Ianniello, supra,* p 427). We have considered the other issues raised by the defendant and find them to be without merit. All concur except Marsh, P. J., and Hancock, Jr., J., who dissent and vote to affirm the order in the following memorandum: Defendant's answers do not demonstrate the willful and deliberate conduct "contrary to the plain directive of the court" which "clearly bespeak[s] of an intent to defy the dignity and authority of the court" *(Matter of Sheridan v Kennedy,* 12 AD2d 332, 333) necessary to support a felony indictment for criminal contempt in the first degree (Penal Law, § 215.51; 9 NY Jur, Contempt, § 2; *Matter of Spector v Allen,* 281 NY 251, 259; *People v Cutrone,* 50 AD2d 838; *People v Renaghan,* 40 AD2d 150, affd 33 NY2d 991; *Matter of Second Additional Grand Jury of County of Kings v Cirillo,* 16 AD2d 605, affd 12 NY2d 206; *People v Marinaccio,* 90 Misc 2d 128). Criminal contempt is a drastic remedy for willful disobedience of a lawful mandate of the court and the "mandate must be clear before disobedience can subject a person to such punishment" *(Matter of Spector v Allen, supra,* p 259). "Where the terms of an order are vague and indefinite as to whether or not particular action by a party is required, then, of course, [the party] may not be adjudged in criminal contempt for the willful failure to take such action. [Citations omitted.]" *(Matter of Sheridan v Kennedy, supra,* p 334; see *Ketchum v Edwards,* 153 NY 534.) Defendant, when examined concerning the details of his alleged receipt of money from Donald Paone repeatedly professed his inability to recall. It is evident from the transcript that he was not a candid and cooperative witness. Some of his answers were equivocal and one may suspect that some of his "I don't recalls" were false. However, he made replies to all of the questions. There is no statement in the record by any member of the Grand Jury or by the Assistant District Attorney and nothing in the questioning which can be construed as even an indirect notice to defendant that his answers had not been accepted as responsive. There was no direction to defendant to answer by the foreman of the Grand Jury as in *People v Ianniello* (21 NY2d 418). Nor did the Assistant District Attorney or the Grand Jury foreman reject any answers or attempt to compel the witness to be more specific or precise in his answers. (Compare the extraordinarily persistent but unsuccessful efforts of the examiner in *People v*

*Ianiello [supra]* to obtain admissions or denials with respect to certain allegations.) Thus the record does not show that defendant's equivocation and lack of candor were the product of an intent to defy the authority of the court so that his evasions could be considered as contumacious and unlawful refusals to answer required to support a charge of criminal contempt (Penal Law, § 215.51). Defendant was never compelled to make the "rational choice" as in *People v Breindel* (73 Misc 2d 734, *supra)* between a course of conduct that he believed was acceptable to the court and one that he knew was in defiance of the court's authority and thus contemptuous. We think, therefore, that, on this record, the trial court was correct in relying on *People v Cutrone (supra),* and *Matter of Second Additional Grand Jury of County of Kings v Cirillo (supra),* which, as we read them, hold that before a witness may be charged with criminal contempt for making equivocal or unresponsive answers, it must fairly appear in the record either from a warning given, statements made, or from the questioning, that the witness knew his answers were not being accepted and that his continued equivocation and unresponsiveness would be contrary to the court's plain directive. The informal, ambiguous and elliptical statements allegedly made by the Assistant District Attorney off the record and outside the Grand Jury room that it was his "feeling" that the defendant had been evasive would not constitute the unequivocal notice required by the rule. In any event, the indictment for criminal contempt must stand or fall solely on what appears on the record of the proceeding before the Grand Jury. *People v Renaghan (supra,* p 152). Nor can it be said on this record that defendant's "I don't recalls" were "so plainly inconsistent, so manifestly contradictory and so conspicuously unbelievable as to make it apparent from the face of the record itself that the witness ha[d] deliberately concealed the truth and has given answers which are replies in form only and which, in substance, are as useless as a complete refusal to answer." *(Matter of Finkel v McCook,* 247 App Div 57, 63, affd 271 NY 636; see *People v Renaghan, supra,* p 152; *People v Marinaccio, supra,* pp 132-133.) In our opinion, the indictment was properly dismissed. It could be argued that the precedent established by the majority would permit a Grand Jury to accept with seeming satisfaction the testimony of a witness, whose answers for a variety of reasons may have been less than responsive, and later, upon an analysis of the answers and in their uncontrolled discretion and without warning or other notice to the witness, decide that his memory lapses and unresponsive answers were not acceptable after all but so equivocal as to warrant an indictment for criminal contempt. The possibility for misuse of such power by overzealous, arbitrary or unscrupulous Grand Jury foremen and prosecutors is obvious. The Legislature in elevating criminal contempt committed by Grand Jury witnesses from a misdemeanor to a felony in 1972 for the purpose of enabling Grand Juries investigating organized crime to compel answers from recalcitrant witnesses (see Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law, § 215.51, p 525) could not also have intended to create a trap for the unwarned and unwary. We believe the dismissal of the indictment should be affirmed. (Appeal from order of Monroe Supreme Court—dismiss indictment.) Present—Marsh, P. J., Moule, Dillon, Hancock, Jr., and Witmer, JJ.